[Civ. No. 23529.   Second Dist., Div. Three.   Apr. 23, 1959.]

JERROLD J. KESSLER, JR., et al., Plaintiffs and Appellants, v. MAXWELL SAPP et al., Defendants and Appellants.

Horowitz & Howard and Alvin F. Howard for Plaintiffs and Appellants.

Theodore J. Elias, Harold Easton and T. J. Elias for Defendants and Appellants.

SHINN, P. J.—Plaintiffs agreed in writing to purchase from defendants a parcel of unimproved property for subdivision purposes. Upon the latters' refusal to convey the property, plaintiffs brought an action for specific performance. Defendants filed a cross-complaint for declaratory

relief and to quiet title. At the trial, defendants objected to the introduction of any evidence upon the ground that the complaint did not state a cause of action for specific performance; their objection was sustained by the court and plaintiffs were allowed to file an amended complaint in which they sought damages for breach of contract. When the matter again came on for trial, defendants moved to exclude evidence upon the ground that the written agreement was too uncertain to give rise to a cause of action for damages for breach of contract. Defendants' motion was granted and judgment was entered in their favor. Plaintiffs then made a motion for new trial, which was granted by the court. Defendants appeal from the order granting plaintiffs a new trial and plaintiffs appeal from the judgment.

It is now settled that a new trial may be had because of error in entering judgment adverse to the plaintiffs upon the sustaining of a demurrer without leave to amend. (Code Civ. Proc., § 657, subd. 7; *Carney* v. *Simmonds*, 49 Cal.2d 84 [317 P.2d 305].) Since defendants' motion to exclude evidence was tantamount to a general demurrer, our question on their appeal from the new trial order is whether, under the facts pleaded, the amended complaint states the substance of a cause of action on any theory. (*Byson* v. *City of Los Angeles*, 149 Cal.App.2d 469, 472 [308 P.2d 765] and cases cited.)

The contract, which was set out in the complaint and the amended complaint, consisted of written escrow instructions dated January 20, 1956, as supplemented by a letter agreement of January 24th and an amendment to the escrow instructions dated April 4th. The original instructions contemplated a sale of the property to plaintiffs for $115,000. The escrow was to close April 5, 1956. Plaintiffs were to deposit $50,000 in installments of $2,000, $10,000 and $38,000 and a trust deed securing their promissory note for $65,000, payable 18 months after the date of the note. By a special provision, which we have set out in the margin, the parties agreed to subordinate the deed of trust to a first trust deed securing a construction loan to be obtained by plaintiffs[1]

---

[1] 'This Deed of Trust is to file concurrently with a first trust deed to be obtained by the purchaser; terms of said first trust deed to be approved by Sapp Bros. Construction Co., a partnership, prior to recording. The Deed of Trust securing the above described Note shall contain the following Subordination Agreement: The Beneficiary on behalf of his or her heirs, administrators and assigns hereby agree and consent that during the life of said Deed of Trust the Trustors or their successors in interest may obtain a loan from a Bank, Insurance Company, Savings

We have likewise set out in the margin the letter agreement dated January 24th.[2] It provided in substance that the costs of the subdivision in excess of $15,000 were to be deducted from the $50,000 to be paid to defendants through the escrow; that plaintiffs were to furnish defendants with bids for the subdivision and improvement work from three reputable contractors; and that an additional sum equal to 10 per cent of plaintiffs' expenditures for the subdivision and improvement work would be allowed as an item of subdivision costs as the value of their personal services.

The amendment to the escrow instructions extended the escrow until July 5th. Plaintiffs were to deposit $8,000 in addition to the $12,000 already in the escrow and they agreed to the immediate release to defendants of $17,500, the balance

and Loan Association or Mortgage Company, securing a note for construction and/or permanent financing to be secured by a deed of trust which will be and remain at all times a lien on the property herein described and superior to the lien of this deed of trust. As a matter of record only, the Seller agrees to accept the Deed of Trust securing the above described Note on subject property described as individual parcels or lots instead of acreage if the buyer has completed subdivision and obtained correct legal description describing the property by Lot and Tract. The Seller agrees to subordinate the Deed of Trust which will become a second deed of trust to a first trust deed to be filed concurrently or after close of escrow, and said first trust deed not to exceed in the amount equal to $6.50 per square foot exclusive of garages, stairways and porches.''

[2] ''January 24, 1956

''Sapp Brothers Construction Company
  5133 West Washington Boulevard
  Los Angeles, California

''Gentlemen:

''We are writing this letter for the purpose of supplementing the escrow instructions signed by us at the Bank of America on January 20, 1956. The agreement between us, in addition to the terms set forth in the escrow instructions, is as follows:

''If the improvement and subdivision costs exceed $15,000, then we are to be allowed a deduction from the $50,000 required to be deposited by us in escrow in an amount equal to the sum by which these costs exceed $15,000. In order to assure you that all work will be done as economically as possible, we shall supply you with at least three bona fide bids from reputable contractors capable of being bonded for completion, for all work done in connection with the subdividing and improving of the property. In fixing the costs for subdividing and improvements, a sum equal to 10 per cent of the actual amounts paid or incurred by us shall be added and allowed as a cost for our own personal services rendered in connection with such work.

''It is our understanding that the subdivision and improvement costs shall include all costs incurred in connection with the subdivision of the property in accordance with the requirements of the County of Los Angeles for such subdivisions. In addition to costs of actual construction for labor and material, all other costs incurred in connection with

of $2,500 to be released to defendants' real estate brokers as payment of one-half of their commission on the sale.

The amended complaint alleged the execution of the above-mentioned instrument and incorporated them by reference. Plaintiffs alleged that they performed all the conditions of the agreement to be performed by them, that they demanded a deed to the property and that defendants refused to make the conveyance. It was alleged in the amended complaint that plaintiffs released the $20,000 to defendants and their agents; expended the sum of $4,000 for the services of engineers and lawyers in the preparation of a subdivision plan; obtained the authorities' tentative approval of a subdivision plan and tract map; furnished defendants with a copy of the proposed tract map, and deposited in escrow three bids from reputable contractors showing that the cost of the subdivision and improvement work would be $56,856. Plaintiffs alleged that the reasonable value of their personal services in connection with the subdivision was $5,168. The prayer seeks recovery of the $20,000 released from the escrow, the $4,000 expended by plaintiffs, $5,168 as the value of their services, and substantial damages on account of defendants' failure to convey the property.

The answer denied the material allegations of the amended complaint. Defendants alleged as affirmative defenses to the action that they received no consideration for the alleged contract, that plaintiffs failed to perform any of the conditions of the agreement other than the payment of the $20,000, and

---

the improvement and subdivision of the property shall be allowed on the basis set forth above including, but not limited to, fees, bonds, permits, engineering costs, fill and compaction reports, costs for the acquisition of rights of way or easements, whether on site or off site, so that all necessary work may be done to subdivide the entire property into individual lots in conformity with the requirements of all governmental organizations to which the property is subject.

''Finally, if a first trust deed is not placed on the property in accordance with the escrow instructions before the close of escrow, and 'if,' thereafter, a lender or lending institution so requires, you will reconvey the deed of trust and accept in its place another identical deed of trust to be filed concurrently with the filing of a first trust deed to which your trust deed is to be subordinate in accordance with the escrow instructions.

''If this is in accordance with your understanding of our agreement, please so indicate by signing a copy of this letter for our files.

Very truly yours,

(s) Don S. Levin
(s) Jerrold J. Kessler, Jr.

SAPP BROTHERS CONSTRUCTION COMPANY
(s) Maxwell Sapp''

that their own assent thereto was procured through mistake and through the representations of the real estate broker (who was the agent for both parties in the transaction) that the subdivision costs would not substantially exceed $15,000, although plaintiffs and the broker knew that the costs would be substantially in excess of $15,000. By way of cross-complaint, defendants sought upon the same grounds as set forth in their answer to quiet title to the property and to obtain a declaration of the nullity of the agreement.

As we have said, the court ruled that the amended complaint did not state a cause of action for damages for the reason that the contract pleaded therein was too uncertain to be binding. This construction was a correct one and it is not disputed by the parties on the appeal. The escrow instructions of January 20th provided for the subordination of the trust deed to a first trust deed to be obtained by the purchasers; only one term of the contemplated deed of trust was set out in the instructions, namely, that the amount of the encumbrance was not to exceed $6.50 per square foot "exclusive of garages, stairways and porches" (evidently relating to buildings to be constructed); the rate of interest, the amount of the monthly payments and the period of the debt were left to the future agreement of the parties. This radical uncertainty as to a material feature of the sales agreement not only rendered it incapable of specific enforcement (*Gould* v. *Callan,* 127 Cal.App.2d 1 [273 P.2d 93]), but also rendered unmaintainable an action for damages for its breach. (*Burgess* v. *Rodom,* 121 Cal.App.2d 71 [262 P.2d 335].)

The question is, however, whether the amended complaint contains allegations of facts which would entitle the purchasers to some relief. Plaintiffs contend that they have sufficiently stated a cause of action for the recovery of the $20,000 paid to defendants and their agents, the $4,000 they expended for engineers and lawyers, and for $5,168 as the value of their personal services on a theory of unjust enrichment. We agree, at least with respect to the $20,000.

The facts alleged in the amended complaint, if proved, would clearly establish plaintiffs' right to recover the $20,000. A purchaser who has paid a portion of the purchase price under a contract for the sale of real property which is void for uncertainty may recover his payments in an action in assumpsit. (*Poetker* v. *Dyck,* 83 Cal.App. 771 [257 P. 185]; *Harwell* v. *Reiniger,* 123 Cal.App. 485 [11 P.2d 421].)

Defendants argue that a party may not rely upon an unjust enrichment theory where he has pleaded an express contract. The argument would have been meritorious had the agreement been enforceable. But, as we have seen, the agreement was not an enforceable one.

With respect to the $4,000 spent by plaintiffs in obtaining approval of a subdivision and the $5,168 claimed as the value of their personal services, the facts alleged do not place these claims in the category of purchase money paid or permanent improvements made upon the land. As a general rule, a purchaser who is entitled to restitution may, in addition to the sums paid under a void contract, recover the reasonable value of any improvements made, or for services rendered pursuant to agreement, which are of material benefit to the vendor. (Rest., Restitution, § 53; Williston on Contracts, rev. ed., vol. 5, p. 4133 (§ 1479) ; 92 C.J.S. 611.)

It does not necessarily follow from the facts alleged in the amended complaint that defendants received any benefit from the expenditures or services or were under a duty to reimburse plaintiffs. But the question whether they ought, in equity and good conscience, to reimburse plaintiffs under the theory of unjust enrichment is one to be determined from the evidence developed upon a trial. Obviously, we cannot anticipate what facts may or may not be developed. If plaintiffs wish to amend their complaint to state additional facts, they should be permitted to do so.

Since the amended complaint stated the substance of a cause of action, it was error to grant defendants' motion to exclude evidence and enter judgment in their favor. The court properly granted plaintiffs' motion for new trial.

The order is affirmed and the appeal from the judgment is dismissed, plaintiffs to recover costs.

Wood (Parker), J., and Vallée, J., concurred.