[Civ. Nos. 27553, 28645.   Second Dist., Div. Four.   July 2, 1965.]

RICHARD L. CUMMINS et al., Plaintiffs, Cross-defendants and Respondents, v. EARL F. GATES, Defendant, Cross-defendant and Respondent; MARGARET M. GATES, Defendant, Cross-complainant, and Appellant.

RICHARD L. CUMMINS et al., Plaintiffs and Respondents, v. EARL F. GATES, Defendant, Cross-complainant, and Respondent; MARGARET M. GATES, Defendant, Cross-defendant, and Appellant.

(Consolidated Appeals.)

John D. Gray for Defendant and Appellant.

John D. Miller, in pro. per., for Plaintiffs and Respondents.

Ames Crawford for Defendant and Respondent.

KINGSLEY, J.—These consolidated appeals involve a dispute over the validity and enforcement of a contract for the sale of real property, with collateral disputes between the vendors, who formerly were husband and wife. Milton R. Roth, one of the original plaintiffs, died after one appeal was taken but before the second appeal. We have captioned the appeals as the parties have done, showing the substitution of Dr. Roth's administrator in the second appeal but not in the first. For convenience, we refer to Dr. Roth as "plaintiff."

As we point out below, both appeals are submitted on clerk's transcripts. We set out, in the preliminary statement

of facts, the background of the dispute as it appears from uncontradicted statements in the pleadings and briefs.

Appellant Margaret M. Gates (hereinafter "Mrs. Gates") and respondent Earl F. Gates (hereinafter "Dr. Gates") formerly were husband and wife. In connection with divorce proceedings between them, they executed a property settlement agreement. Insofar as herein pertinent, that agreement provided that Mrs. Gates could continue to reside in the residence on a 6-acre[1] tract owned by them in joint tenancy, until that property was sold to a "bona fide" buyer. Dr. Gates agreed that, so long as Mrs. Gates resided on the property, he would pay the taxes thereon and keep up the payments on a trust deed thereon, with a right of recoupment out of the proceeds of the property when, as and if so sold. It was also provided that, if either party produced a "bona fide buyer" for the property, the other party "either agrees to go along with sale or to buy out the party who wishes to sell." Another provision of the property settlement agreement obligated Mrs. Gates to join in executing and filing a joint income tax return for the year 1961.

In 1961, Dr. Gates presented to Mrs. Gates a proposal from his accountant, respondent Cummins, to purchase the residence and a 1-acre tract surrounding it, together with a proposal from Cummins and respondent Roth (a close friend of Dr. Gates') to purchase the remaining acreage of approximately 5 acres. After some negotiations, on March 20, 1961, the parties entered into two escrows, one (No. 61-22) for the sale of the residence and 1 acre to Cummins, the other (No. 61-23) for the sale of the other 5 acres to Cummins and Roth.

Escrow No. 61-22, relating to the residence and 1 acre (hereinafter "the residence"), called for a purchase price of $50,000, payable $5,000 out of Cummins' funds, $30,000 out of the proceeds of a loan to be placed on the property, with the balance of $15,000 represented by notes secured by second and third trust deeds on the property sold.

Escrow No. 61-23, relating to the sale of the acreage, called for a purchase price of $60,000, all to be represented by a purchase money note and trust deed. The terms of this note and certain provisions in the escrow agreement relating to a subordination clause form one of the issues in this case and are considered in detail at a later point in this opinion.

---

[1]The acreages are approximate.

The escrow relating to the sale of the residence closed in due course. Shortly thereafter, and after Mrs. Gates had removed from the property, Dr. Gates and his new wife moved into the residence and a deed to them from Cummins was executed and recorded.

By its terms, the escrow relating to the acreage was not to close until five and one-half months after it was opened. Shortly before the closing date, Mrs. Gates notified the escrow agent not to close the escrow and served a demand (purportedly pursuant to the "go along or buy out" provision above mentioned) seeking to purchase the acreage property on the same terms as those provided in the projected sale to Cummins and Roth.

Eventually, and after a formal demand on Mrs. Gates to deposit her deed in the escrow and allow it to be closed had been ignored, plaintiffs sued for specific enforcement of the escrow agreement.[2] Dr. Gates answered, in effect joining in the prayer for specific performance, and also cross-complaining against Mrs. Gates, seeking (a) to recover over against her any damages that might be recovered from him by Cummins and Roth in the specific performance action; (b) for his costs of defending the Cummins and Gates' action; (c) for damages by way of lost interest on the purchase price and by way of expenses in maintaining the property and paying taxes thereon because of the delay in closing the escrow; (d) for damages occasioned by Mrs. Gates' refusal to join in a joint income tax return for 1961; and for punitive and general damages for her allegedly malicious refusal to allow the escrow to close according to its terms.[3]

Mrs. Gates answered the complaint and Dr. Gates' cross-complaint and also filed a cross-complaint. As ultimately amended, her third amended cross-complaint contains four causes of action: (1) for rescission on the ground of fraud, of the contract for the sale of the acreage; (2) for rescission, on the same ground, of the sale of the residence or damages in case such rescission is not granted; (3) for damages, in

---

[2]The complaint also sought reformation of the legal descriptions in the escrow agreement and damages. At the trial, the damage claim was waived. It is not here contested that, if plaintiffs are entitled to specific performance of the agreement of sale, the other relief granted to them by the judgment was proper; conversely, if the judgment for specific performance is erroneous the other relief granted falls with it.

[3]We have summarized and rephrased, for the purpose of this opinion, the four separately stated causes of action in Dr. Gates' cross-complaint; we deal later with the correctness of the judgment entered thereon.

case rescission is not granted under the second cause of action, based on a claim that Dr. Gates had not properly divided the proceeds of that sale; and (4) to set aside the property settlement agreement on the grounds of fraud and duress. Demurrers to the amended cross-complaint were sustained without leave to amend and a judgment of dismissal in favor of Dr. Gates was entered. Mrs. Gates appealed from the judgment of dismissal. While proceedings for the preparation of the transcript on appeal were pending, the action proceeded to trial, resulting in findings of fact and conclusions of law adverse to Mrs. Gates and in favor of Cummins and Roth on the complaint and in favor of Dr. Gates on his cross-complaint. Mrs. Gates has appealed from the judgments so entered.

After the case had thus been concluded in the trial court, but before any transcript on the appeal from the judgment had been prepared or filed, respondents moved to dismiss the appeal relating to Mrs. Gates' cross-complaint, on the ground that the issues of fraud had, in fact, been litigated by consent in the trial of the complaint and of Dr. Gates' cross-complaint and the appeal from the judgment dismissing Mrs. Gates' cross-complaint had, thus, become moot. We dismissed the appeal insofar as it related to Mrs. Gates' cross-complaint against Cummins and Gates, since, as to them, it was not a final judgment; we denied without prejudice the motion of Dr. Gates to dismiss the appeal as to him, on the ground that, although there was a separate and final judgment as to him, we could not determine, on the record then before us, how far our decision on the appeal from the final judgment might affect the earlier appeal.[4]

Thereafter, proceedings to secure a settled statement on the appeal from the judgment having failed, that appeal was perfected and is before us on a judgment roll record.

It follows that we now have before us, for determination: (a) Mrs. Gates' appeal from the final judgment in favor of Cummins and Roth in the action for specific performance, which appeal also brings before us the interlocutory order sustaining their demurrers to the causes of action in Mrs. Gates' cross-complaint which relate to Cummins and Roth; (b) Mrs. Gates' appeal from the judgment dismissing, as to Dr. Gates, the causes of action in her cross-complaint which

---

[4]The text of our unpublished opinion on the motions to dismiss is set out in an appendix to this opinion.

relate to Dr. Gates; and (c) Mrs. Gates' appeal from the judgment in favor of Dr. Gates on his cross-complaint against her.

The issues which the parties seek to have us determine are thus: (1) the validity and enforceability of the agreement of March 20, 1961, relating to the sale of the acreage; (2) the correctness of the relief granted to Dr. Gates on his cross-complaint against Mrs. Gates; (3) the correctness of the order sustaining, without leave to amend the demurrers to Mrs. Gates' third amended cross-complaint.

## I

▐ We need not consider the contentions that the trial court improperly sustained the demurrer to the first two causes of action in Mrs. Gates' cross-complaint, which causes of action sought rescission of the agreement to sell the acreage and of the sale of the residence. Although the pleadings are no model, and the pretrial statement no help, an examination of Mrs. Gates' second amended answer to the complaint, on which the case went to trial,[5] discloses that she therein raised, both expressly and by incorporating by reference her cross-complaint, all of the matters on which she now relies to rescind the two agreements on the ground of fraud. In brief, her claim is that Cummins acted in purchasing the residence, and that Cummins and Roth acted in purchasing the acreage, as agents of and as dummies for Dr. Gates and that the two plaintiffs and Dr. Gates had conspired to deceive her into believing that the plaintiffs were buying for their own account and were, therefore, "bona fide" buyers within the meaning of the property settlement agreement. However, with this claim put in issue, the trial court found as follows:

"XX. No conspiracy or unfair dealing has been practiced upon defendant Margaret M. Gates in connection with the contract for the sale of real property in said Escrow No. 61-23 by anyone. No advantage was attained by plaintiffs or defendant Earl F. Gates or any combination of them over defendant Margaret M. Gates. No agreement of any kind exists by and between plaintiffs or either of them and defendant Earl F. Gates for a transfer of any portion of the

---

[5]This answer attempted to plead certain affirmative defenses. Demurrers were sustained to those defenses and no attempt to amend was made. However, the answer, even after removal of the affirmative defenses, sufficiently raised the issue of fraudulent concealment of the real buyer.

property the subject of escrow No. 61-23 from plaintiffs, or either of them, to said defendant Earl F. Gates.

"XXI. The sale of the house and lot the subject of the escrow No. 61-22 from defendants to plaintiff Richard L. Cummins was a bona fide sale and plaintiff Cummins purchased the house in his own name for his own account and not as the secret or other agent or representative of defendant Dr. Earl F. Gates."[6]

Since the appeal from the judgment is presented to us on the judgment roll alone,[7] we are bound to assume that evidence was received adequate to support the findings before us. And, with the findings just quoted, it becomes immaterial whether or not, had plaintiffs actually been acting as secret agents for Dr. Gates, either he or they were under any legal duty to make Mrs. Gates aware of that situation.

## II

However, Mrs. Gates urges two objections to the validity and enforceability of the acreage sale, which contentions are based on the terms of that sale as pleaded.

### A

As we have stated above, the sale was to be for a purchase price of $60,000, evidenced by a purchase money note and trust deed, with the first payment to fall due one year after the recordation of the trust deed (i.e., one year after close of escrow). Since the closing date for the escrow was five and one-half months after it was opened, the first payment was not due until approximately 18 months after the agreement of sale.

Pointing out that a buyer who executes a purchase money note and trust deed incurs no personal liability thereon (Code Civ. Proc., § 580b), Mrs. Gates urges that the transaction amounted only to an option to purchase for which no consideration was paid.

However, plaintiffs contended in their complaint that the two escrows were part of a single transaction, wherein Dr.

---

[6]As we point out below, similar findings were made in favor of Dr. Gates in connection with his cross-complaint against Mrs. Gates.

[7]Respondents ask us to consider, also, in support of their claim that the fraud issues were fully litigated, a partial reporter's transcript, filed in connection with their motion to dismiss the appeal relating to Mrs. Gates' cross-complaint. We have not done so; no motion to augment the record by such an addition was ever made (see Cal. Rules of Court, rule 5(f)) and, in any event, the partial transcript would add nothing to the pleadings, findings and conclusions of law.

and Mrs. Gates intended to and did dispose of the entire 6-acre property. Mrs. Gates, in her answer, and in the portions of her cross-complaint which are incorporated by reference therein, also contended that the sale of the residence and the sale of the acreage were parts of a single transaction; in fact, her claim of fraudulent concealment with reference to the acreage sale is dependent on her claim that the residence sale was fraudulently induced. By its finding of fact I, the trial court adopted this position and expressly found that plaintiffs' allegations on this point were true.

Since, admittedly, a substantial cash payment was made for the residence sale, that consideration carries over and applies to the other part of the transaction and is enough to support both sales.

*B*

■ The escrow agreement relating to the acreage provided for subordination of the purchase money trust deed to ". . . a deed of trust to be hereafter executed by the trustors or their successors in interest covering the said land and securing a loan, not exceeding \$135,000.00, made primarily for the purpose of constructing improvements thereon, such loan to be evidenced by a promissory note or notes bearing interest at not more than 8% per annum and payable at such times and upon such terms as are required by the lender thereof."

Mrs. Gates contends that this provision was so vague and indefinite as to render the agreement unenforceable. The point is without merit. The subordination clause herein involved is, in substance, identical with that considered in *Stockwell* v. *Lindeman* (1964) 229 Cal.App.2d 750 [40 Cal. Rptr. 555], and the validity and enforceability of that language was there upheld against the same contentions as Mrs. Gates makes here.

III

■ In their complaint, plaintiffs sought the specific enforcement of the agreement as contained in the escrow instructions. At the beginning of the trial, on July 17, 1963, plaintiffs offered to pay the full purchase price if specific performance was decreed as prayed; and the judgment as entered, on October 7, 1963, provided that: "Upon the payment of the sum of \$60,000.00, within sixty (60) days from and after this judgment becomes final, into escrow No. 61-23

. . .'' plaintiffs would be entitled to a conveyance of the property involved.

Since we hold that the contract as originally made, was valid and enforceable, we need not consider the contention of Mrs. Gates that validity could not be based on a different contract created by plaintiffs' trial offer. However, she argues, in addition, that the decree enforces a contract to which she had never agreed. However, the agreement allowed plaintiffs to pay off the purchase money note by payments of $10,000 *or more*, beginning one year after the recordation of the trust deed, which was to take place at the close of escrow. The plaintiffs alleged, and the trial court found, that the escrow could and would have closed, on the date originally contemplated, had it not been for Mrs. Gates' refusal to perform her obligations. Had the escrow closed as originally provided, the first payment, which at the option of plaintiffs could have been the full amount, would have fallen due on August 31, 1962—a date long prior to the start of the trial and, of course, long prior to the date at which payment will be made under the decree before us. Since it has been determined that Mrs. Gates' objections to the agreement were without foundation, she cannot complain of a delay which she caused.

In oral argument, but nowhere that we can see in her briefs, Mrs. Gates objects that the decree does not call for the payment of interest. Not only is the point raised too late for consideration but it is without merit. The case is in equity; the trial court was fully justified in denying interest as part of the recompense to plaintiffs for what is already almost four years of unjustified delay in securing the benefits of their bargain.

Since no objections to the escrow agreement have been urged, other than those hereinabove discussed, it follows that plaintiff is bound by the finding of the trial court, in its finding number V, that ''. . . the contract of the parties represents a fair and adequate consideration for the sale of the real property the subject of said escrow as of the date of the opening of said escrow on or about March 20, 1961. As of the date of the opening of said escrow No. 61-23, said contract was just and reasonable as to all parties.''

## IV

In connection with her action in ordering the escrow agent not to close the acreage sale escrow, and at sundry

times thereafter, Mrs. Gates purported to exercise the right given to her in the property settlement agreement to "buy out" Dr. Gates' interest on the same terms as contained in the sale to Cummins and Roth. The trial court expressly found that this attempt came too late. The ruling was correct. Her rights were in the alternative—to "go along" with the proposed sale, or to "buy out." Having once elected to "go along," she had no right to change her mind five and one-half months later and after (as the trial court has found) plaintiffs had expended monies in reliance on that election.

Since Mrs. Gates had no valid reason to object to the consummation of the sale of the acreage to plaintiffs, and since the trial court has decreed a performance in accordance with the equitable rights of the plaintiffs, the judgment in their favor must be and is affirmed.

## V

The property settlement agreement between Dr. Gates and Mrs. Gates provided, with reference to the properties herein involved, that Mrs. Gates should be allowed to live thereon, rent free, as long as they owned it as joint tenants, and that, so long as she occupied the property, Dr. Gates would pay the taxes and trust deed payments. The agreement then provided:

"(3) Husband shall receive credit upon the equity in the property for all funds paid upon taxes and trust deed payments including interest paid; but Husband shall receive no credit for penalties paid because of late payments or the like. In other words when the said property or any portion thereof is sold Husband shall first be reimbursed for funds paid upon taxes and trust deed payments before the proceeds are divided between the parties."

In the third cause of action in her cross-complaint, Mrs. Gates alleged: ". . . that in violation of the terms of said property settlement agreement, cross-defendant Gates caused to be deducted from cross-complainant's share of the proceeds [of the sale of the residence] the entire amount of payments made for taxes, interest and principal instead of deducting the same from the net proceeds of the sale as required by the said property settlement agreement; that by reason of the wrongful application of moneys by the cross-defendant Gates, cross-complainant was damaged in the sum of $1,066.09, together with interest thereon at the rate of

7% per annum from the date of close of escrow on May 19, 1961, to date; that said wrongful application was caused by the preparation of a misleading written escrow instruction prepared at the instance of cross-defendant Gates and signed by cross-complainant at the request of cross-defendant Gates and in ignorance of its true effect.''

Dr. Gates argues that this allegation is bad, because the allegation that he ''caused'' the alleged deduction and misapplication is a mere conclusion of law, citing *Lesperance* v. *North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 343 [31 Cal.Rptr. 873], and *Drown* v. *New Amsterdam Casualty Co.* (1917) 175 Cal. 21 [165 P. 5]. However, in those cases, the allegation that defendant ''caused'' or ''procured'' a result stood alone. In the instant case, however, Mrs. Gates has, in the final portion of her allegation, set out what the courts in the cited cases found lacking, namely the manner in which the result was ''caused''—namely the preparation and requesting her signature of ''misleading'' escrow instructions. In this respect, the pleading more nearly resembles the one found to be sufficient in *Krug* v. *Meeham* (1952) 109 Cal.App.2d 274 [240 P.2d 732]. We think that the allegation was sufficient to raise the issue of an improper diversion of funds and of cross-defendant's participation therein.

Dr. Gates argues, also, that this issue is also foreclosed by the findings of the trial court in the main action. The finding relied on is as follows: ''The allegations of Paragraph IV on Page 2 of the Cross-Complaint are true. That the two escrows described in said Paragraph were bonified [*sic*] contracts between plaintiffs and defendants herein; there was no conspiracy at any time as between plaintiffs and Cross-Complainant Earl F. Gates; said escrow contracts were not shams or illusory in any respect but were legal enforceable contracts and no fraud was practiced upon Margaret M. Gates by Cross-Complainant Earl F. Gates or either of the plaintiffs in this action; and that plaintiffs were at no time agents, employees or representatives of Cross-Complainant Earl F. Gates.'' which was followed by a conclusion of law reading as follows: ''Cross-Complainant Earl F. Gates practiced no fraud, deceit or unfair dealing upon Cross-Defendant Margaret M. Gates in connection with Escrow Contract #61-23 or Escrow Contract #61-22 and there was no conspiracy to deprive Cross-Defendant Margaret M. Gates of any of her property rights either by Cross-Complainant Earl F.

Gates or in conjunction with the plaintiffs in this action or at all."

However, findings and conclusions must be responsive to the issues. While, as we have pointed out above, Mrs. Gates did put in issue the alleged fraud in inducing her to enter into the sale of the residence, it is clear that the complaint, Dr. Gates' cross-complaint, and Mrs. Gates' answer raised only the issue of the alleged fraudulent concealment of the alleged conspiracy to secure the properties for Dr. Gates by use of plaintiffs as dummy purchasers. Nowhere in the pleadings on which the case went to trial is there any hint of the conduct involved in the third cause of action in Mrs. Gates' cross-complaint; we cannot construe the finding as quoted as determining an issue not before the court.

It follows that Mrs. Gates has improperly been denied her right to a trial on an issue properly pleaded.

█ The fourth cause of action in Mrs. Gates' cross-complaint seeks to rescind, on the ground of fraud, the property settlement agreement between herself and Dr. Gates. As pleaded, it also attempted to state a cause of action against Cummins and Roth and, by involving them, to set out an additional basis for avoidance of the sales of the real property. In view of the findings above discussed, to the effect that Cummins and Roth had acted independently of Dr. Gates and were neither his agents, nor dummies, nor parties to any corrupt agreement with him, this much of the fourth cause of action must, of course, be disregarded as moot. However, the fact that one item of property has been sold does not bar Mrs. Gates from rescinding the agreement between herself and her former husband, if she has grounds for such rescission—the purchase price would merely be substituted for the real property in any new property division.

█ Nor is her cause of action, if any, against Dr. Gates for such rescission moot. The trial court expressly omitted to make any findings on this subject, reciting that the present appeal was pending. It follows that, if Mrs. Gates has pleaded, or reasonably can be expected to plead, a cause of action for rescission, that issue remains.

The pertinent portion of the fourth cause of action reads as follows:

"That the consent of cross-complainant to the property settlement agreement referred to in paragraph I of this cause of action was obtained by fraud in that:

"1. Cross-complainant is informed and believes that cross-

defendant Gates concealed from her certain assets of both community and separate property, the extent and nature of which is presently unknown to cross-complainant;

''2. That certain alleged separate property assets were greatly overvalued by cross-defendant Gates in arriving at their value in the property settlement agreement and which so-called separate property assets were used to offset values of community interests in property under the terms of the said property settlement agreement; that such overvaluation was greatly unfair to cross-complainant and in violation of the confidential relationship existing between cross-complainant and cross-defendant Gates;

''3. That the alleged property settlement agreement was not fair and equitable to cross-complainant in that a disproportionate amount of community property was awarded to cross-defendant Gates, the guilty party to the divorce;

''4. That duress was practiced on cross-complainant by cross-defendants [*sic*] Gates in the form of false, fraudulent and untrue statements as to cross-complainant's moral character and evidence manufactured by cross-defendant to defame cross-complainant; that cross-complainant feared for her good name and the consequent effect of a scandal on the future lives of the children of the parties by reason of such false and defamatory accusations by cross-defendant Gates, and was thereby coerced into signing the said property settlement agreement;

''5. That the consent of cross-complainant was not freely and voluntarily given to the property settlement agreement, and the same is unfair to her.''

While the allegations could well be more specific, we think that, measured by the rules as to the duty of a husband in negotiation of such agreements, as set forth in *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], the allegations that Dr. Gates concealed assets from her and over-valued others sufficiently alleges a violation of his fiduciary duty to permit Mrs. Gates an opportunity to meet the objections as to specificity raised in the undetermined special demurrer of Dr. Gates. The demurrer should not have been sustained without affording her leave to amend. (*Wennerholm* v. *Stanford Univ. School of Medicine* (1942) 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].)

## VII

The trial court gave judgment against Mrs. Gates and in

favor of Dr. Gates, in the amount of $2,045.20, as damages for her breach of the escrow agreement to sell the acreage to the plaintiffs. No error in this award is suggested if, as we have above held, the judgment in favor of validity and enforceability of the escrow agreement is sustained. It follows that this portion of the judgment in favor of Dr. Gates should be affirmed.

## VIII

The trial court also granted what it denominated a conditional or interlocutory judgment in favor of Dr. Gates and against Mrs. Gates for lost interest, attorney's fees and additional income taxes. The judgment recites that it is granted conditionally because of the pendency of the appeal from the judgment in No. 27553, dismissing Mrs. Gates' cross-complaint for rescission of the property settlement agreement. Since we hold that that judgment must be reversed, it follows that the conditional judgment in No. 28645 falls also; the court, on any retrial, will be free to adjust any of the matters therein involved in the light of its ultimate action on Mrs. Gates' third and fourth causes of action in No. 27553.

In case No. 28645, the judgment in favor of plaintiffs and against defendant Margaret M. Gates is affirmed; the judgment in favor of cross-complainant Earl F. Gates and against cross-defendant Margaret M. Gates is affirmed insofar as it awards, in the first paragraph thereof, the sum of $2,045.20 as damages for her breach of contract, otherwise that judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In case No. 27553, the judgment dismissing the cross-complaint of Margaret M. Gates against cross-defendant Earl F. Gates is reversed and the case is remanded for further proceedings consistent with this opinion.

Plaintiffs shall recover their costs on appeal as against Margaret M. Gates; as between Margaret M. Gates and Earl F. Gates, each party shall bear his own costs on appeal.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied July 20, 1965, and appellant's petition for a hearing by the Supreme Court was denied August 25, 1965.

## Appendix

The following is the text of the unpublished opinion filed March 13, 1964, granting in part and denying in part,

respondents' motion to dismiss the appeal in Civil No. 27553, and referred to in footnote 4 of the present opinion:

"Cummins and Roth filed an action seeking specific performance of a contract for the sale of real property, reformation, declaratory relief and damages. Earl F. Gates and Margaret M. Gates, formerly husband and wife, were joined as parties defendant. Mrs. Gates filed a cross-complaint, against plaintiffs and her former husband, alleging fraud on the part of all parties, and also alleging fraud on the part of her former husband in the procurement of a property settlement agreement between them (some of the provisions of which affect her rights as against the plaintiffs). Earl F. Gates also ·filed a cross-complaint against Margaret Gates. Demurrers to Mrs. Gates' cross-complaint were sustained, and a judgment dismissing the cross-complaint was entered, from which she appeals.

"Respondents have moved to dismiss the appeal as moot, alleging: subsequent to the dismissal of the cross-complaint, the main action went to trial; by stipulation, appellant was allowed to introduce, as a defense, all evidence which she desired to offer, bearing on the issues of fraud, except as to fraud in connection with the property settlement agreement; findings were made adverse to her on the issues so litigated and a judgment against her was duly entered both on the complaint and on her former husband's cross-complaint. It is stated that she has appealed from that judgment.

"I

"No point is now made as to the appealability of the judgment dismissing the cross-complaint. However, we are required to notice, on our own motion, the issue of appealability, since it goes to our jurisdiction and such jurisdiction cannot be conferred by consent or by nonaction of the parties. (3 Witkin, Cal. Procedure (1954) Appeal, § 159.)

"It is the general rule that a dismissal of a cross-complaint against the original parties plaintiff is not appealable. The order is interlocutory and the dismissal may be reviewed on the appeal from the final judgment. But where the cross-complaint is against a new party, or against a codefendant, the dismissal is appealable, since it is a final determination of rights between the cross-complainant and the new party or codefendant. (3 Witkin, Cal. Procedure (1954) Appeal, § 13.)

"Accordingly, the present appeal must be dismissed as to respondents Cummins and Miller; as to respondent Earl F. Gates, the appeal originally was proper.

## "II

"It is conceded that the appeal as against Earl F. Gates is not moot insofar as the cross-complaint sought relief against him in connection with the property settlement agreement (the fourth cause of action). On the showing now made, we cannot say that it has been rendered moot as to the other three causes of action. Appellant, in those causes of action, sought affirmative relief and not merely a defense against a judgment enforcing her to carry out her contract with plaintiffs. If the judgment against her should be reversed, the court should be able to set aside the dismissal of her cross-complaint, if the interests of justice so require. We cannot determine, from the record now before us, whether or not the final judgment did determine all issues posed by the cross-complaint against Earl F. Gates. In that status, the motion to dismiss should be denied without prejudice.

"The motion to dismiss the appeal as to respondents Cummins and Miller is granted and that portion of the appeal is dismissed. The motion to dismiss the appeal as against respondent Earl F. Gates is denied insofar as it affects the fourth cause of action in appellant's cross-complaint; said motion is denied without prejudice insofar as it affects the first three causes of action in said cross-complaint. It is ordered that, when the record on appeal in the appeal by Margaret M. Gates from the judgment entered in action No. SO C-3212 on or about October 10, 1963, is filed in this court, such appeal shall be consolidated with the present appeal and the two appeals shall be heard and considered together."