362 F.2d 419
 The LAHAINA-MAUI CORPORATION, a California corporation, Appellant,
v.
Joseph TAU TET HEW and Helen Akiona Hew, husband and wife, George Tan and Shizuko Ruth Tan, husband and wife, Appellees.
 No. 20419.
 United States Court of Appeals Ninth Circuit.
 June 14, 1966.
 
 Richard P. Schulze, Jr., Moore, Silberman & Schulze, Honolulu, Hawaii, for appellant.
 J. Russell Cades, Wm. M. Swope, Honolulu, Hawaii, for appellees.
 Before HAMLEY, JERTBERG and ELY, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 Joseph Tau Tet Hew, George Tan, and their respective wives, own 144,192 square feet of unimproved beach property on the Island of Maui, State of Hawaii. They brought this action against The Lahaina-Maui Corporation to obtain cancellation of an "Option to Lease" that property, asserting that it is null and void. After responsive pleadings and a hearing, a summary judgment was entered for plaintiffs. Defendant appeals, contending that instead of granting summary judgment for plaintiffs, the court should have either specifically enforced the agreement or awarded damages to defendant for its breach.
 
 
 2
 It appears from the record before us that the option was signed by Samuel Cohen and Robert Lee and the appellee landowners on February 15, 1963. The option was supported by a consideration of $1000, paid to appellees, and was to be effective until May 19, 1963. The expiration date of the option was later extended to August 1, 1963 by agreement of the parties.
 
 
 3
 In addition to the names of the parties, the option contained a description of the property, the term of the proposed lease (56½ years), and the agreed annual rental. The numerous other provisions which would be required in a final lease agreement were covered in the option by the following paragraph:
 
 
 4
 "Said lease shall contain the standard provisions normally contained in a lease for similar property situate in the State of Hawaii together with the provision that the Lessor shall subordinate their fee to permit the Lessee to obtain financing which provision is by way of example, but not by way of limitation."
 
 
 5
 On July 25, 1963, Cohen and Lee delivered to appellees a proposed lease agreement drafted by California attorneys. This was not signed by appellees and it was later admitted by appellant that it contained provisions which were not standard under Hawaii real estate practice. Cohen and Lee on July 26, 1963, assigned their interest in the "Option to Lease" to the appellant corporation. On the same day, appellant, together with its predecessors in interest purported to exercise the option by delivering to appellees a "Notice of Exercise of Option to Lease."
 
 
 6
 No responsive action was taken by appellees until August 23, 1963, when their attorney advised appellant's Honolulu counsel that the option was considered by them to be of no force and effect and wholly invalid. A tender of the $1000 paid in conjunction with the option was made by appellees and refused by appellant. Appellees then commenced this action.
 
 
 7
 Appellant, in its answer, denied the essential allegations of the complaint and counter-claimed for specific enforcement of the option plus damages in the amount of $10,000 and, alternatively, for damages to be determined at a trial. Attached to the answer was a form of lease which, appellant alleged, complied with the terms of the option and which appellant offered to execute in performance of that agreement.
 
 
 8
 Appellees, on January 5, 1965, filed a "Motion to Dismiss Counterclaim, or in the Alternative, Motion for Summary Judgment." Two days later a hearing was held on this motion in the district court. The district court, in an oral opinion, ruled that the portion of the option stipulating the use of standard lease provisions did not violate the requirements of certainty and definiteness as set forth in Francone v. McClay, 41 Haw. 72. However, with regard to the subordination clause,[1] a non-standard lease provision, the district judge found "gross uncertainty." And, since this provision was deemed vital to the agreement, the district court held that the uncertainty precluded enforcement of the option.[2]
 
 
 9
 At the close of the hearing the court, in response to a query by appellant's counsel, stated that the effect of the ruling was to dismiss appellant's prayer for damages as well as the prayer for specific enforcement. Counsel for appellant, in an effort to save the validity of the option, then offered to waive the subordination provision. The court agreed to stay its decision pending submission of arguments and authority on this proposal, and this was done. On June 14, 1965, the district court entered a "Ruling on Waiver and Motion for Summary Judgment" in which the earlier decision on the uncertainty of the subordination clause was reaffirmed. With regard to appellant's offer to waive the clause and cure the option of this defect, the court held that the provision was intended to be mutually beneficial to the parties and could not be unilaterally waived by appellant.
 
 
 10
 Accordingly, a judgment was entered on June 30, 1965, cancelling the lease and declaring it null and void. In addition the judgment ordered cancelled the lis pendens which had been filed by appellant on October 25, 1963 in the Hawaiian Bureau of Conveyances and with the registrar of the land court of Hawaii.[3]
 
 
 11
 On the same day that the judgment favorable to appellees was entered, appellant filed a notice of appeal and a new lis pendens in the Bureau of Conveyances. Appellees thereafter filed in the district court a motion for the removal of this lis pendens or, in the alternative, for the posting of a supersedeas bond. On this issue, the district court ruled that the law of Hawaii does not provide for the filing of lis pendens with respect to an action concerning real property pending before a United States district court. The lis pendens was declared null and void and ordered cancelled.
 
 
 12
 Appellant's assault on the district court's disposition of this case raises four issues: (1) Did the district court err in holding, as a matter of law, that the subordination clause is uncertain, thus rendering the option unenforceable? (2) Assuming that the clause is uncertain, was the appellant improperly precluded from waiving it and thereby purging the option of its imperfection? (3) Assuming that specific enforcement is not warranted due to uncertainty, should the district court nevertheless have entertained appellant's prayer for damages for breach of the agreement? (4) Did the district court err when it cancelled appellant's lis pendens? We will consider these questions seriatim.
 
 
 13
 The principles to be applied in determining whether the "Option to Lease" lacked the requisite certainty for enforcement are stated in Francone v. McClay, 41 Haw. 72, 78:
 
 
 14
 "There is little or no conflict of authority upon the general principle that where a contract is complete and certain as to the essential and material terms, parts and elements of a lease, specific performance will be granted; nor if the contract to lease or the negotiations of the parties affirmatively disclose or indicate that further negotiations, terms and conditions are contemplated, the proposed lease is considered incomplete and incapable of being specifically enforced." (Emphasis in original.)
 
 
 15
 In the Francone case, which involved the enforceability of a contract to enter into a long-term lease, the court held that a provision that the lease include all "usual covenants" did not render the contract too indefinite to be enforced by the court. That opinion indicates that the parties could easily have ascertained the usual lease covenants from similar transactions and standard lease forms. In our case, the subordination clause fell outside the scope of the Francone decision; appellant has never contended that this clause is a standard or usual Hawaiian lease provision.
 
 
 16
 The thrust of appellant's argument is that the subordination clause, as written, is definite and certain and that no further negotiations between the parties were contemplated. Succinctly stated, it is appellant's position that the clause was intended to be unrestricted, granting appellant "carte blanche" with regard to encumbering appellees' fee interest.
 
 
 17
 In the district court, appellant proffered expert testimony to establish that the subordination clause could be converted very easily into an acceptable lease provision. Now it is urged that Francone establishes that the question of definiteness of a lease provision is one of fact and that the district court should have considered appellant's proffered evidence in resolving this issue.
 
 
 18
 The expert testimony presented in Francone dealt with the question of whether the terms of the proposed lease were standard or "usual" in Hawaiian real estate practice. Francone did not hold that the definiteness of a non-standard lease provision is a matter of fact to be determined after a consideration of community custom and practice. We are concerned here with a non-standard lease provision and the district court was warranted in treating the problem of definiteness as a matter of law to be resolved by the wording of the provision itself and the undisputed circumstances surrounding the transaction. See Magna Development Co. v. Reed, 228 Cal.App.2d 230, 234-235, 39 Cal.Rptr. 284, 287-288.
 
 
 19
 Appellant challenges the district court's holding that the subordination provision is uncertain and indefinite as a matter of law. Here it is urged that the language is plain and unambiguous, that no further negotiations were intended by the parties, and that the buyer and sellers mutually agreed upon an unconditional subordination clause.
 
 
 20
 We cannot accept appellant's characterization of the subordination provision. This provision, on its face, implies that further negotiations were contemplated. It is unreasonable to presume that the property owners would agree at this preliminary stage of the transaction to the encumbrance of their fee interest by a lien or liens, indefinite in amount, and securing a loan or loans with an unspecified rate of interest, term and manner of repayment. It is equally unlikely that the property owners, who are risking their fee interest by agreeing to subordinate, would be unconcerned with the source of the loans obtained by the lessee, and the ultimate use of the proceeds of the loans. The option stipulated only that subordination was to allow the lessee to obtain "financing." Only one jurisdiction, California, has dealt extensively with the problem of enforcement of subordination provisions. The first important case was Gould v. Callan, 127 Cal.App.2d 1, 273 P.2d 93, which held that a subordination provision in a contract for the conveyance of real estate that did not stipulate the rate of interest, term and method of repayment of the proposed loan was an incomplete statement and too uncertain for enforcement. The same result was reached in Roven v. Miller, 168 Cal.App. 2d 391, 335 P.2d 1035 (amount of loan left unspecified); and Kessler v. Sapp, 169 Cal.App.2d 818, 338 P.2d 34 (rate of interest, term and manner of repayment of debt left unspecified).[4]
 
 
 21
 Since a subordination provision must be drafted at an early stage of the sale or lease transaction at a time prior to the negotiation of any proposed loans, it necessarily cannot specify all the details of the loan transaction. There is evidence that the California courts have made allowances with regard to the degree of specificity required. See Cummins v. Gates, 235 Cal.App.2d 532, 45 Cal. Rptr. 417; Stockwell v. Lindeman, 229 Cal.App.2d 750, 40 Cal.Rptr. 555. But even in California where such provisions are common and widely utilized, the courts have not enforced a subordination clause which did not stipulate, at least, the maximum amount of the proposed loan, and the maximum rate of interest.
 
 
 22
 Appellant relies upon McCarty v. Harris, 216 Ala. 265, 113 So. 233. There a real estate contract which contained a subordination provision was enforced. The court held that failure to specify the amount of the loan to be obtained did not render the contract unenforceable. However, the court found that the subordination provision was not an essential term of the contract to convey, it was merely a subsidiary part of the agreement which would not prevent enforcement. In our case the district court found that the subordination provision was intimately related to the other terms of the option.
 
 
 23
 But we need not rest our decision solely on the theory that the unconditional nature of this provision necessarily indicates an incomplete agreement. The conclusion that the subordination provision renders the option unenforceable is buttressed by further ambiguity appearing on the face of that provision. Once again we quote the disputed clause:
 
 
 24
 "* * * together with the provision that the Lessor shall subordinate their fee to permit the Lessee to obtain financing which provision is by way of example, but not by way of limitation." (Emphasis added.)
 
 
 25
 The emphasized portion of the subordination clause defies precise interpretation. Apparently it was appended as a legal "catch-all" to impart flexibility to the agreement. The result, however, is an obscurity which has not been satisfactorily clarified. Appellees take the position that the quoted words imply that numerous non-standard lease provisions were intended to be negotiated and included in the final lease agreement, and that the subordination provision was only an example of these unspecified nonstandard provisions. In answer to this contention, appellant in its reply brief states:
 
 
 26
 "The last clause — `which provision is by way of example, but not by way of limitation' — clearly refers to the `provision' which precedes it. And that provision is definitely stated to be the one exception to the proviso that the lease shall contain `standard provisions.' Nowhere is there any use of the plural or indication that more than the one specified nonstandard provision was intended."
 
 
 27
 But appellant's statement falls short of being a satisfactory explanation. If the subordination clause was intended as the only non-standard provision, why was it stated that it was included "by way of example, but not by way of limitation"?[5]
 
 
 28
 The unqualified subordination provision together with the "by way of ex-example" phrase, points inescapably to the conclusion that further negotiations on the subordination matter would be necessary before the parties could reach a satisfactory agreement.
 
 
 29
 Appellant, in the court below, offered to waive the subordination provision in order to obtain specific enforcement of the remainder of the option agreement. On appeal, it is argued that the district court committed error by refusing to grant enforcement conditioned on such waiver.
 
 
 30
 In support of this argument, appellant cites a number of cases[6] which stand for the proposition that a party who is willing and able to perform may obtain specific enforcement of substantial portions of an agreement despite the impossibility or impracticability of obtaining full performance. However, these cases involve valid contracts which are definite and certain in their terms, the impediment to enforcement being the impossibility of obtaining the full promised performance. Our case does not involve such a problem, rather we are faced with an indefinite and uncertain contract provision which is essential to the agreement.
 
 
 31
 Appellant places primary reliance upon a group of cases in which specific enforcement was decreed despite uncertainty in the payment provisions of real estate contracts. Typical of this authority is Blanton v. Williams, 209 Ga. 16, 70 S.E.2d 461, where the vendor resisted enforcement on the ground that a loan provision of the contract was too uncertain. The court held that the vendee's offer to pay the balance of the purchase price in cash amounted to a waiver of the loan provision and eliminated the agreement's uncertainty. The court found that the loan provision was for the buyer's benefit and he therefore had a right to waive it.
 
 
 32
 The district court, unlike the court in Blanton, concluded that the critical provision was intended for the benefit of both parties to the agreement, and thus it could not be unilaterally waived.[7] Appellant asserts that the subordination provision would result in only an indirect and incidental benefit accruing to the appellees, and that the possibility of such an advantage is too speculative to allow this provision to be characterized as mutually beneficial.
 
 
 33
 In our opinion the possibilities that the subordination provision might prove to be substantially beneficial to the appellees, as well as to appellant, afforded adequate justification for the district court's determination that the provision was not one which, in all circumstances could inure only to the benefit of the party who sought to waive it. The district court therefore properly determined that this was a material provision which could not be unilaterally waived.
 
 
 34
 The result is that the "Option to Lease" is burdened with a material provision the terms of which, as has been established, are indefinite because they are left to future negotiations. If an option agreement provides for inclusion of material provisions in the contract contemplated by the exercise of the option, the option agreement should define the terms of the provisions with reasonable precision. If they are tainted with such vagueness and ambiguity that it might be reasonably expected that substantial disagreement as to precise terms may arise upon attempted exercise of the option, as it has arisen here, then no enforceable option agreement has been made. See 1 Corbin Contracts, § 29 at 85 (1963). See, also, Joseph v. Donover Co., 9 Cir., 261 F.2d 812, 820. Applying that principle here, the "Option to Lease" was an agreement to enter into a subsequent contract, and since it was incomplete with regard to a material term to be included in the subsequent contract, this "contract to make a contract" was not a contract at all. Hansen v. Catsman, 371 Mich. 79, 123 N.W.2d 265.
 
 
 35
 The district court therefore correctly determined that the "Option to Lease" could not be specifically enforced.
 
 
 36
 Appellant further contends, however, that even if the "Option to Lease" cannot be specifically enforced, the district court should have entertained the prayer for damages contained in appellant's counterclaim.
 
 
 37
 There are instances where a contract which is too indefinite to be specifically enforced can be the basis for an action for damages. Restatement, Contracts § 370 comment b (1932). But our determination that the "Option to Lease" does not constitute a contract precludes this relief. In the absence of a legally enforceable contract, there is no basis for a damage award. See Kessler v. Sapp, 169 Cal.App.2d 818, 823, 338 P.2d 34, 37.
 
 
 38
 Since the district court judgment is affirmed, there is no need to pass upon appellant's final application of error concerning the district court's cancellation of appellant's lis pendens.
 
 
 39
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 "* * * together with the provision that the Lessor shall subordinate their fee to permit the Lessee to obtain financing which provision is by way of example, but not by way of limitation."
 
 
 [2]
 At the hearing, the district court also expressed the opinion that appellant had failed properly to exercise the option. The basis of this view was that the contract submitted to appellees on July 25, 1963, virtually contemporaneous with the notice of exercise, contained non-standard lease provisions and therefore constituted a "conditional acceptance" or "conditional exercise" of the option
 In its later written ruling, however, the court omitted any discussion of this ground and relied solely on the uncertainty of the subordination provision.
 
 
 [3]
 While the judgment makes no reference to the $1000 paid to appellees at the time the option was entered into, we assume that appellees will return that sum to whomever is entitled thereto, if they have not already done so
 
 
 [4]
 Accord, Magna Development Co. v. Reed, 228 Cal.App.2d 230, 39 Cal.Rptr. 284; Kusky v. Berger, 33 Misc.2d 564, 225 N.Y.S.2d 797,aff'd, 20 A.D.2d 851, 249 N.Y.S.2d 858. See Comment, 52 Cal.L. Rev. 157 (1964).
 
 
 [5]
 Philip Ching, who drafted the option agreement at the request of Robert Lee, could shed little light on the meaning of these words. In his deposition, in response to a question concerning a prior interview with one of appellees' attorneys, Ching made the following comment:
 "At the time of talking with Bill, this point was brought up about, you know, by way of example and by way of limitation, and he did ask as to what it meant, and I believe I said at this time, at that time, what was read. In other words, I didn't know exactly what it meant, and then I believe, because I made a notation also of that meeting with Bill that well, it was probably put in there to — so that — it was in connection with subordination, that this would be by, you know, in other words, it wouldn't limit the lease. In other words, the standard provisions of the lease in any way, by the fact that you are saying, well, the subordination clause. In other words, I recall telling Bill that what these people wanted to do was just enter into a standard form lease, and that the only thing that they were really concerned about was what I had gathered from the negotiations, was the lease term, how much, and the subordination."
 
 
 [6]
 E. g., Lee Wah Koon v. Maui Dry Goods and Grocery Co., Ltd., 30 Haw. 313
 
 
 [7]
 The district court illustrated the possibility of benefit accruing to appellees in the following manner:
 "The term of the lease was to be 56½ years. If a building of x value were placed thereon, it might be completely depreciated by the time the lease expired, whereas if a building of y value were built thereon, it might still be of great value to the lessor at the termination of the lease. The difference between an x or y building might well be the difference between subordination and no subordination of the fee, and in that difference the plaintif had an obvious interest and potential benefit."