[Civ. No. 4679.   Fourth Dist.   Apr. 16, 1954.]

AUGUST M. MARTIN et al., Respondents, v.
EVANGELINE E. BAIRD, Appellant.

Kenneth N. Hastin for Appellant.

Borton, Petrini, Conron & Brown for Respondents.

GRIFFIN, J.—Plaintiffs brought this action to compel specific performance of an alleged agreement of defendant to sell 10 acres of land in Kern County. The only question presented is the sufficiency of the evidence to show a written agreement subject to specific performance.

In July, 1951, defendant, who resided in Los Angeles, wrote a real estate agent, Barker, in Bakersfield, about the possible sale of her property, and suggested a selling price of $10,000. Barker received an offer of $8,000 from plaintiffs, through another agent. This offer was reduced to writing on a standard real estate association form for a deposit receipt. It was signed by the plaintiffs. It acknowledged the receipt of $200 deposit by the agent on September 4, 1951, with an offer of $8,000, payable $2,000 down, and the balance at $1,000 or more per year at 6 per cent. July 1st was to be the date of each year's payment. This offer was forwarded to defendant by her agent Barker, with a letter signed by him, stating:

"Here is an offer offered by a client — thru a fellow broker . . . In brief the offer is — $2,000 cash down — and $1,000 every year — due on July 1st starting 1952 — until paid for — interest at 6%. Buyer must have the right to pay up in full at any time. Full purchase price $8,000. I am enclosing the original offer — in case you wish to accept it. — Then of course — sign the offer so that I can open escrow — and please enclose all necessary papers — If the offer is not acceptable — please state any counter offer. The buyer understands the ground is leased until — March 1st 1952.

"Sincerely

"Jack Barker

[Note] "The Buyers must have the privilege of building a home on the property — Prior to possession March — 5 — In other words — it would take 5 or 6 months to build a home. Of course if they destroyed a few dollars of crop — they would reimburse Lessee.

"J. B."

Soon after the letter was mailed, Barker called defendant on the phone and informed her of the offer, as mailed, and that he thought the offer could be raised $500, and if she was not satisfied with the $8,000 offer and if she stated she would accept $8,500, he thought the purchaser would give that amount. Soon after defendant received the offer and letter of transmittal she wrote a letter addressed to Barker reading:

"Thank you for your recent letter containing the offer for my Edison land.

"I have turned down several cash offers on the place for more than your client is offering.

"I talked the matter over with my son and come to the decision that we will have to have $8,900 with $2,500 down, the balance to be paid $1,000 or more per year at 6%. The interest is to be above the $1000 payment.

"If this counter offer is accepted you may let me know and I will make preparations for the sale.

"Thanking you, I am

"Yours truly

"Evangeline Baird"

On receipt of this written counteroffer, Barker contacted plaintiffs and they individually read defendant's letter and counteroffer and informed Barker they accepted it. Another deposit receipt was accordingly prepared and was admittedly received by defendant. It recited that $1,000 had been paid as a deposit on account of the purchase of the described property at $8,900, $2,500 cash and balance at the rate of $1,000 or more per year at 6 per cent interest, July 1st to be the date of payment each year, "all oil and mineral rights to go to buyer." This deposit receipt was likewise signed by plaintiffs as purchasers, agreeing "to purchase the above-described property upon the terms and conditions herein stated."

A check for the $1,000 was delivered to the broker. Barker wrote defendant that her counteroffer had been accepted by the purchasers, that he would prepare an escrow instruction in accordance therewith, and that she should sign and return it to him or come in person to Bakersfield and sign it. Sometime later, defendant appeared with Barker at the title company to sign the instruction. She objected because she did not want to give up the oil rights, and refused to sign. This action followed.

It is defendant's argument that the writings do not reveal a sufficient memorandum in writing, signed by the party to be charged, to satisfy the statute of frauds under section 1624, subdivision 4 of the Civil Code in this, that the letter making the counteroffer was but a proposal directed to defendant's agent and accordingly was not intended as a counteroffer upon which her agent was authorized to act without further action on her part in signing escrow instructions set-

ting forth all of the conditions she wished to attach to the sale, and particularly as to the oil rights and the effect of a lease that existed on the property which was subject to expiration on March 1st, 1952.

An agreement for the purchase or sale of real property does not have to be evidenced by a formal contract drawn with technical exactness in order to be binding. A memorandum of the agreement is sufficient, and this may be found in one paper or in several documents, including an exchange of letters which are accepted and acted upon by the parties. (*King* v. *Stanley,* 32 Cal.2d 584 [197 P.2d 321].) It is true that the offer must be unequivocally accepted in order to be binding. Measured by any reasonable standard, there is here mutual assent to a contract which is sufficiently certain so that the court was within its power in decreeing specific performance. Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract. The usual and reasonable conditions of such a contract are, in the contemplation of the parties, a part of their agreement. (*King* v. *Stanley, supra; Menveg* v. *Fishbaugh,* 123 Cal.App. 460 [11 P.2d 438], and cases cited; *Breckinridge* v. *Crocker,* 78 Cal. 529 [21 P. 179]; *Grafton* v. *Cummings,* 99 U.S. 100 [25 L.Ed. 366].)

No mention was made in any offer submitted by defendant that the oil rights were not to be considered as a part of the deal. This idea may have been an afterthought. The purchasers knew of the existing lease and agreed to take the property subject to that lease.

The court made specific findings against defendant's contention in respect to the contentions above discussed, and ordered specific performance of the written agreements above mentioned. The evidence and authorities cited fully sustain this finding. The bulk of defendant's authorities, such as *Duffy* v. *Hobson,* 40 Cal. 240 [6 Am.Rep. 617], and *Church* v. *Collins,* 18 Cal.App. 745 [124 P. 552], involve holdings that the agent may not bind the principal in a contract for the sale of realty without express authority, and are not here applicable because the writings are signed by the parties themselves and the question of the agent's authority is not the determining factor.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.