[Civ. No. 26885. Second Dist., Div. Three. Dec. 13, 1963.]

JOE B. BURROW, Plaintiff and Appellant, v. ERNEST C. TIMMSEN et al., Defendants and Respondents.

Silver & Lazar and Bernard Silver for Plaintiff and Appellant.

Edward L. Lascher and Wilfrid J. Bedworth for Defendants and Respondents.

SHINN, P. J.—This is an action for specific performance of a land sale contract, or in the alternative, damages. The trial court sustained the objection of defendants to the introduction of evidence and granted their motion for judgment on the pleadings. Judgment was entered for defendants and plaintiff appeals.

On March 18, 1961, defendants signed a listing agreement with a real estate broker offering to sell the property for

$50,000, terms to be $14,000 down, the balance secured by a trust deed bearing 7 per cent interest, which defendants agreed to subordinate to a contemplated first trust deed.

Plaintiff Joe Burrow gave the broker a $1,000 check and signed a deposit receipt which provided, in material part: "Escrow to be opened with above deposit. Buyer to place an additional $11,500.00 into escrow prior to the close thereof. Buyer to execute to seller a trust deed and note in the amount of $35,000.00 payable $260.00 per month including interest at the rate of 7% per annum. Said note to require payment of interest only for the first 12 months following close of escrow. Said trust deed to carry usual Title Insurance & Trust Co. form of subordination allowing above trust deed to automatically subordinate to construction loan and/or permanent loan not to exceed $300,000.00, maximum interest rate of 9% and maximum maturity date of 30 years. This offer is contingent upon (1) buyer's approval in escrow of C. C. & R's, (2) preliminary title report (3) buyer being able to obtain R-3 zoning for entire property. Seller to furnish buyer with survey from licensed surveyor showing property to be 196 x 145 net size. Escrow to be for a period of 120 days or sooner." Other provisions of the printed form are of no materiality.

Defendants made a counteroffer increasing the purchase price to $49,500 and the monthly payments under the note to $300. This counteroffer was signed by defendants and signed and accepted by appellant. It was written on the reverse side of the written listing document and the two were clearly intended to constitute a single instrument. The defendants refused to proceed with the agreement and plaintiff brought this action, alleging that the sum of $49,500 was a fair and reasonable value of the property, that the written agreement was fairly entered into and was and is, in all respects, just and reasonable; and that appellant has performed or is ready and willing to perform all conditions of the agreement.

On two occasions defendants moved for judgment on the pleadings and for summary judgment, which motions were denied. Upon commencement of the trial the defendants once more attacked the sufficiency of the complaint, on the ground that it failed to state a cause of action, by objecting to the introduction of any evidence and moving for judgment on the pleadings. Pending a ruling upon the motions the complaint was amended to include the deposit receipt and a form of subordination agreement, which was alleged to be the "usual Title Insurance & Trust Company form of subordina-

tion referred to in the Standard Form Deposit Receipt." It reads as set out in the margin.[1] The grounds of defendants' motions were that the agreement is too uncertain to permit of specific enforcement and that it does not appear from the facts alleged that it is a just and reasonable agreement.

Defendants contend that the contract is uncertain as to the general terms of the purchase and as to the terms of the subordination agreement and proposed superior encumbrances. They endeavor to bring themselves within the principle that specific performance will be denied a land sale contract where the terms of payment and the security for payment are

---

[1] "SUBORDINATION AGREEMENT

It is agreed by and between the parties as follows:

"1. That this deed of trust shall, provided no notice of default under the terms hereof then appears of record, be subject to a deed of trust to be hereafter executed by the trustors, or their successors in interest to secure:

"(a) A loan made for the purpose of constructing improvements on said land, such loan to be evidenced by a promissory note or notes, and the costs including but not limited to brokerage fees and insurance fees of obtaining such loan, and;

"(b) Such additional loans as may be thereafter made, under the terms of said deed of trust to the then owners of the said land.

"2. That the total amount of the indebtedness secured by said deed of trust, including such additional loans shall not exceed in aggregate the principal sum of $—, payable over a period of time not to exceed — years and bearing interest, exclusive of any late charges and/or penalties, and/or fees set forth in said note and/or deed of trust, of not more than — % per annum, and that said loan shall be made by a bank, life insurance company, or correspondent thereof, building or saving loan association, or other institutional lender.

"(a) Upon recordation of such construction loan deed of trust contemplated above it shall conclusively be deemed that the entire amount thereof has been, or will be used for or applied upon the costs of construction of improvements on said land and for the costs including but not limited to brokerage fees and insurance fees of obtaining such loan.

"3. After completion of improvements on said land, a new deed of trust may be placed thereon securing a loan to be evidenced by a promissory note or notes not exceeding in the aggregate the principal sum of $—, payable over a period of time not to exceed — years, and bearing interest, exclusive of any late charges and/or penalties and/or fees set forth in said note and/or deed of trust at not more than —% per annum, which deed of trust when duly recorded and when the construction loan deed of trust contemplated above has been reconveyed shall constitute a lien and charge on said land prior and superior to the lien and charge of this deed of trust.

"4. That any deed of trust covering said property and complying with the foregoing provisions shall be deemed to be the deed of trust contemplated hereby."

not set forth with reasonable certainty. (*Kessler* v. *Sapp*, 169 Cal.App.2d 818 [338 P.2d 34]; *Buckmaster* v. *Bertram*, 186 Cal. 673 [200 P. 610]; *Bonk* v. *Boyajian*, 128 Cal.App.2d 153 [274 P.2d 948]; *Roberts* v. *Adams*, 164 Cal.App.2d 312 [330 P.2d 900]; *Chung* v. *Johnston*, 128 Cal.App.2d 157 [274 P.2d 922]; *Burgess* v. *Rodom*, 121 Cal.App.2d 71 [262 P.2d 335].)

We have concluded that the agreement is not so uncertain as to be incapable of enforcement. The modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done. ▮ Neither law nor equity requires that every term and condition of an agreement be set forth in the contract. (*King* v. *Stanley*, 32 Cal.2d 584 [197 P.2d 321]; *Martin* v. *Baird*, 124 Cal.App.2d 598 [269 P.2d 54]; 45 Cal.Jur.2d, Specific Performance, § 17, pp. 272-273.) The usual and reasonable terms found in similar contracts can be looked to, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474, 481-485 [289 P.2d 785, 49 A.L.R.2d 496]; *Martin* v. *Baird, supra,* 124 Cal.App.2d 598; *King* v. *Stanley, supra,* 32 Cal.2d 584.)

In *Rannard* v. *Lockheed Aircraft Corp.,* 26 Cal.2d 149, 151 [157 P.2d 1], the court said: "In considering whether the judgment on the pleadings was properly granted, it is but necessary to determine the sufficiency of the complaint upon the same principle as though it had been attacked by general demurrer. In other words, it is only where there is an entire absence of some essential allegation that a motion for judgment on the pleadings may be properly granted. [Citations.]"

▮ The terms of the deferred payments are that plaintiff would execute a note for $37,000, bearing 7 per cent interest, and secure payment with a trust deed, payments to be made at the rate of $300 per month. Defendants contend there is uncertainty due to the failure to state the time period of the note, whether the note will be negotiable, whether defendants would be entitled to attorney's fees in an action to collect on the note, who will be the trustee, whether there are to be covenants against waste, who has the obligation of paying taxes, what the defendants' remedies would be upon default, and what powers the trustee would have.

We do not regard any of these omissions of detail as a defect which necessarily renders the agreement unenforceable. It must be presumed that the parties understood and intended that both the note and the trust deed would contain provisions that are customary in instruments given as part of the purchase price of land. ██ If it is not of common knowledge that there is a general custom in such transactions for the notes and trust deeds to contain provisions for acceleration of maturity of the debt in case of default, and for attorney's fees incurred to enforce payment, the question is one as to which evidence would properly be received.

There are, of course, in conventional trust deeds a variety of terms and conditions which express in detail the full agreement of the contracting parties. The procedure for foreclosure is outlined in sections 2924 et seq. of the Civil Code. ██ It is not required for enforceability of an agreement for the purchase of land that the complete texts of notes and trust deeds to be given in payment of the purchase money be set forth in the agreement. The essentials of the agreement are the amount of the debt and the terms of payment, including the interest agreed upon. When these are stated, and in the absence of expression of a contrary understanding, the agreement shoud be interpreted as if it contained supplemental provisions which have become established canons of real estate law.

██ The same considerations have application to the proposed construction loan and the security to which the purchase money trust deed would be subordinated. There is no uncertainty as to the maximum amount of the proposed construction loan or the rate of interest. Plaintiff would have a clear right to borrow a lesser amount at a lesser rate. There is uncertainty whether the debt would have to be paid in periodic installments, but it is not an uncertainty that is necessarily incapable of being removed. The proposed subordination agreement provides that the construction loan must be from "a bank, life insurance company or correspondent thereof, building or savings and loan association, or other institutional lender." It is also provided that the proceeds of the loan, with certain minor deductions, would be used in the construction of improvements. The import of these provisions is that the terms and conditions of the construction loan would have to conform to the practices of responsible and conservative lending institutions. These terms and conditions presumably would be appropriate to assure that the

land, and the improvements to be constructed, would be of a value substantially greater than the amount of money loaned. The mere statement that the construction loan should have a maturity of 30 years does not mean that there would ever be a loan due in 30 years with no requirement for installment payments. Since the money would have to be borrowed from conservative and responsible institutions evidence would be receivable whether such institutions, as a common practice, make construction loans, or loans following completion of construction, without requiring periodic payments for application upon accrued interest and principal of the debt.

Under the rules of construction heretofore stated, and the rule of section 3538 of the Civil Code that that is certain which can be made certain, it does not appear from the facts pleaded that there is uncertainty in defendants' agreement for sale of the property which would render it unenforceable in equity.

The next question is whether the allegations of the complaint are sufficient to meet the requirement of section 3391, subdivision 1, of the Civil Code that specific performance can be granted only if the contract is for an adequate consideration and is just and reasonable. This requirement is sufficiently satisfied for the purpose of stating a cause of action where the complaint alleges the contract price, that it is the reasonable market value, and that the contract, as to the defendant, is just and reasonable. The mere allegation that an agreement is just and reasonable does not preclude an examination of the terms of the agreement as pleaded, and it may be overcome if the agreement itself, as a matter of law, is unjust or unreasonable. Unless the court can find from the facts pleaded, as a matter of law, that the contract is unjust, these allegations are sufficient against a general demurrer. (*Ehrhart* v. *Mahony,* 43 Cal. App. 448, 449-450 [184 P. 1010] ; *Beverage* v. *Canton Placer Mining Co.,* 43 Cal.2d 769, 779 [278 P.2d 694] ; *Foley* v. *Cowan,* 80 Cal.App.2d 70 [181 P.2d 410].)

Whether a contract is unenforceable because it is unjust is a question of fact to be determined by the trial court in the light of all the facts and circumstances of each particular case. (*Cushing* v. *Levi,* 117 Cal.App. 94, 101, 104-105 [3 P.2d 958].) The record does not indicate whether the court regarded the agreement as incapable of enforcement for this reason, but we are of the opinion that the facts alleged would not have warranted the court in concluding that the agreement is unfair or inequitable to the defendants.

■ Upon a retrial the court will be required to make findings of all facts relevant to the questions of the sufficiency of the agreement to render it enforceable and as to whether it is just and reasonable. ■ If the material issues should be resolved in favor of plaintiff and a decree of specific performance be granted, it would be necessary that it include provisions defining in detail the terms of the note and trust deed to be given in favor of defendants to secure the balance of the purchase price and leave no doubt as to the forms of the notes and the instruments given as security therefor which would be encumbrances superior to the trust deed of the defendants.

The judgment (order) is reversed.

Ford, J., and Files, J., concurred.