[Civ. No. 28090.    Second Dist., Div. Four.    Sept. 18, 1964.]

EUGENE A. STOCKWELL et al., Plaintiffs and Appellants,
v. CLARA ELEANOR LINDEMAN, Defendant and
Respondent.

Neil R. Lewis for Plaintiffs and Appellants.

Ellis & Sloan and Lyle C. Ellis for Defendant and Respondent.

BURKE, P. J.—Plaintiffs entered into an escrow agreement with defendant for the purchase and sale of certain real property. Defendant refused to consummate the sale and plaintiffs filed suit for damages. A demurrer to the complaint was sustained with leave to amend, and an amended complaint was filed which omitted the escrow instructions which were included as an exhibit in the original complaint, pleading their purported legal effect. A general demurrer was interposed to the amended complaint which was sustained without leave to amend and judgment for defendant was granted.

Plaintiffs appeal from such judgment and contend the trial court erred: (1) in finding that there were not sufficient facts to state a cause of action; (2) in sustaining the demurrer to the first amended complaint in its entirety in that a second and separate cause of action was properly alleged; and (3) that there was abuse of discretion in not permitting plaintiffs to further amend.

The trial court, in a memorandum of opinion of ruling on demurrer, stated that plaintiffs assert the same cause of action in their amended complaint as was stated in their original complaint which was in turn based upon the escrow instructions, Exhibit "A" in the original complaint; that allegations which made the original complaint vulnerable to demurrer are not withdrawn from the court's consideration by the filing of an amended complaint omitting those allegations without an explanation.

Defendant had urged on demurrer in both instances that the written escrow instructions did not constitute a valid and enforceable contract because the purported agreement was lacking in essential terms in three respects: (1) The subordi-

nation clause respecting the imposition of three trust deed encumbrances was indefinite in terms and therefore unenforceable; (2) the descriptions of the parcels into which the subject property was to be divided, and encumbered with construction loans, were lacking; and (3) the option for the purchase of additional land was merely an agreement to agree in the future and therefore unenforceable. The pertinent provisions of the escrow agreement are set forth in the footnote.[1]

We concur with the trial court that the omission of the specific language of the escrow agreement and the attempted pleading of the contract in general terms does not have the legal effect of withdrawing it from consideration of the court in construing the amended pleading. ▮ In *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713,

[1] "The legal description above is to be further divided into three parcels, legal description of said parcels is to be furnished you by the buyers on [sic] the title company, and the trust deed above in the amount of $14,600.00 is to be recorded as a lien against the most northerly portion of said land.

"The two trust deeds below will be recorded as a lien against the remaining parcels of said land, one on each parcel:

"Trust deed on Personal Escrow Co. form executed by buyers securing one note for $7,300.00, in favor of seller dated in escrow, due in installment years after date with interest at 6% per annum from close of escrow at place designated, principal and interest payable in installments of $52.00 per month or more on the 26th day of each calendar month beginning on the 25th day of March, 1963, and continuing until paid.

"Trust deed on Personal Escrow Co. form executed by buyers securing one note for $7,300.00 in favor of seller dated in escrow due in installment years after date with interest at 6% per annum from close of escrow at place designated, principal and interest payable in installments of $52.00 or more per month on the 26th day of each calendar month, beginning on the 26th day of March, 1963, and continuing monthly until paid.

"All three trust deeds above are to contain the following subordination clause: The beneficiary and for her successors and assigns and for her devisees of [sic] heirs, at a future date to subordinate this deed of trust to a new construction loan deed of trust not to exceed the sum of $80,000.00 with interest not to exceed 7.5% per annum, payable at such terms and upon such conditions as are required by the lender making such construction loan.

". . . . . . . . . . . .

"The seller hereby agrees with the buyers to give the buyers an option thru this escrow for the purchase of the balance of Lot 8, Tract 263, for the total purchase price of $31,000.00 payable $5,000.00 down, and the balance to be payable $250.00 per month, including interest at the rate of 6% per annum, balance of terms to be set out in said option, option to be exercised within six months from date of same."

716 [128 P.2d 522, 141 A.L.R. 1358], the court stated: ''If any verified pleading contains an allegation which renders a complaint vulnerable, the defect cannot be cured simply by omitting the allegation, without explanation, in a later pleading.'' (See, also, *Hardy* v. *Admiral Oil Co.*, 56 Cal.2d 836 [16 Cal.Rptr. 894, 366 P.2d 310].) However, we conclude that, when the first amended complaint is considered with the escrow instructions set forth in the original complaint, it does state two causes of action and that the general demurrer was improperly sustained.

The escrow instructions indicate defendant is to sell to plaintiffs, for $34,200, a portion of lot 8, tract 263, which portion is described by metes and bounds. Thus, the property being sold is definitely established. Of the purchase price, $5,000 is to be paid in cash and the balance in the form of three notes, one for $14,600 and two for $7,300 each. The subject property is to be divided into three parcels—''legal description of said parcels is to be furnished [the escrow agent] by the buyers on [*sic*] the title company.'' Each of these notes is to be secured by a purchase money deed of trust to be recorded as a lien on the three parcels, respectively. The instructions provide that the $14,600 note is to be secured by a trust deed ''against the most northerly portion of said land.'' No other description is given. The two $7,300 notes are likewise to be secured, each trust deed to be ''a lien against the remaining parcels of said land, one on each parcel.''

The legal effect of this paragraph is to delegate to the buyers the task of dividing the property into the three parcels and to supply the escrow agent with the descriptions for insertion in the trust deeds. Imprudent as such a delegation to buyers may appear, it does not render the agreement of the parties void for uncertainty. It leaves nothing to subsequent agreement between the parties. ■ Their understanding is definite and enforceable and simply stated means—the buyers are to divide the property into three parcels as they see fit and are to secure the balance of the purchase price by the three notes and trust deeds on the parcels in the amounts indicated and with the sole qualification that the largest loan of $14,600 be secured by the ''most northerly portion of said land.'' It may be assumed the seller had confidence that the property would be divided by the buyers into three parcels in a fair and reasonable manner and one which would fit in with buyers' plans for development of the property. ■ The court should accord an interpretation which is reasonable (Civ. Code, § 1643) and which gives effect to the intent of

the parties as it may be interpreted from their entire agreement rather than one which renders their contract void. (Civ. Code, §§ 1650, 1652, 1655, 1656.) Any fraud on the part of buyers in dividing the property would give rise to a cause of action by seller.

Each of the trust deeds is to bear a subordination clause stating that the seller agrees ". . . at a future date to subordinate this deed of trust to a new construction loan deed of trust not to exceed the sum of $80,000.00 with interest not to exceed 7.5% per annum, payable *at such terms and upon such conditions as are required by the lender making such construction loan.*" (Italics added.) No terms for the payment of such encumbrances are stated.

Again, while it may seem imprudent or poor business for the seller to agree that the buyers may arrange with the lender, whoever it might be, for the remainder of the terms of the construction loans, so long as principal and interest do not exceed the maximums agreed upon, it is not the function of the court to remake the contract between the parties if the terms are clear and certain. Here, again, there is nothing left for future agreement between the seller and buyers. In effect, the seller states that whatever terms of repayment the lender may require which are satisfactory to the buyers are acceptable to the seller. It is noted that, in the most crucial areas of the maximum amounts of construction loans and of interest rates, the seller has fully protected herself and as to the other details we must assume from their agreement she is content to allow buyers to contract with lenders for new construction loans as they see fit and that whatever serves their interests will not adversely affect her own.

The option covers a particular parcel, the balance of lot 8, to be sold at a purchase price of $31,000, payable $5,000 down, and $250 per month, including interest at 6 per cent, exercisable within six months. The instructions state, "balance of terms to be set out in said option." Thus, this provision of the contract makes certain the property to be sold, purchase price, down payment, monthly payments, interest rate, and the term, six months, within which the option is to be exercised. Standing alone, this provision for an option constitutes an enforceable contract with the elements essential to a valid option being specified with definiteness and certainty.

True, other items could well have been provided for, such

as, whether the sale is to be on a written contract of sale or by the delivering of a deed with the seller taking back a purchase money trust deed securing the remainder of the purchase price, or whether the remainder is to be secured by a mortgage on the subject property. But none of these details are necessary or vital to its enforcement as a valid contract.

What effect then does the addition of "balance of terms to be set out in said option" have upon the enforceability of this option provision? Does it render the contract to give an option "through this escrow" void and unenforceable? We conclude that it does not. If the parties to the escrow fail to agree upon any further terms, the option to be delivered in escrow need contain only the details which are spelled out since they cover the essential ingredients of an enforceable option. Option agreements with less detail have been upheld by the courts.

In its memorandum decision, the trial court stated it was of the opinion that the provisions for the option, a separate cause of action for which was pleaded in the amended complaint, were sufficiently definite to be enforceable, but that the inherent infirmity affecting the entire contract was the indefiniteness and uncertainty of the provisions regarding subordination of the purchase money trust deeds to a future construction loan. The trial court cited the following cases in support of its view: *Kessler* v. *Sapp*, 169 Cal.App.2d 818, 823 [338 P.2d 34]; *Roven* v. *Miller*, 168 Cal.App.2d 391, 397 [335 P.2d 1035]; *Gould* v. *Callan*, 127 Cal.App.2d 1, 5 [273 P.2d 93].

The facts in this case differ substantially from those in *Kessler* v. *Sapp*, *supra*, where only one term of the contemplated construction loan deed of trust, to which the purchase money trust deed was to be subordinated, was specified (maximum rate per square foot of new construction). Omitted were "the rate of interest, the amount of the monthly payments and the period of the debt." These were left to future agreement of the parties.

Likewise, in *Gould* v. *Callan*, *supra*, while a yardstick was provided which related the maximum amount of the construction loan to a percentage of the true building cost of the proposed improvement, no other terms of such loan were stated.

In *Roven* v. *Miller*, *supra*, and in the more recent case of *Magna Development Co.* v. *Reed*, 228 Cal.App.2d 230, 235 [39 Cal.Rptr. 284, 288], not even the maximum amounts of

the construction loan were specified and the contracts were held to be uncertain.

Unlike the above cases, here maximum amounts were agreed upon for the construction loans both as to principal and interest and the additional terms were to be those required by the lender and, inferentially, acceptable to the buyers. Nothing was left for further agreement of the parties. Had such matters been left to the future agreement of the parties, then either party might refuse to agree to anything to which the other party would agree and it would be impossible for the law to affix any obligation to such a promise. (*Gould* v. *Callan, supra.*)

Plaintiffs rely upon the case of *Burrow* v. *Timmsen,* 223 Cal.App.2d 282, 288 [35 Cal.Rptr. 668], in which the court stated: ''We have concluded that the agreement is not so uncertain as to be incapable of enforcement. The modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done. Neither law nor equity requires that every term and condition of an agreement be set forth in the contract. [Citations.] The usual and reasonable terms found in similar contracts can be looked to, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement. [Citations.]''

In *Burrow, supra,* the amended complaint included a form of subordination agreement which was the usual Title Insurance and Trust Company form which provided that the construction loan would be made by '' 'a bank, life insurance company . . . , savings and loan association, or other institutional lender.' '' The opinion continued (p. 290): ''Since the money would have to be borrowed from conservative and responsible institutions evidence would be receivable whether such institutions, as a common practice, make construction loans, or loans following completion of construction, without requiring periodic payments for application upon accrued interest and principal of the debt.''

While in the case before this court the contract did not contain reference to institutional lenders, the statement of general principles set forth in *Burrow, supra,* remains applicable, governing the responsibility of the courts to favor enforcement of contracts and that neither law nor equity

requires that every term be set forth. The rules of construction in *Burrow, supra,* are but further elaborations of those basic principles enunciated in the Civil Code to guide the courts in the construction of contracts to which we have previously alluded.

In a case involving a sale of real estate the Supreme Court has held that the material factors to be ascertained from such a contract are: the seller, the buyer, the price to be paid, the time and manner of payment, and a sufficient description of the subject property so it may be identified. (*King* v. *Stanley,* 32 Cal.2d 584, 589 [197 P.2d 321].) Where these elements are definite the contract may be specifically enforced.

In cases involving sales of real estate which call for subordination of a purchase money encumbrance to a construction loan it is recognized that all of the details of such future loans may not be known in advance and to require details, as to the amount of monthly instalments and the exact duration of the loan, to be anticipated and stated in the sales agreement would unduly burden the parties. Of greatest importance is the maximum amount of such construction loans based either on a percentage of construction costs, or stated, as here, in an agreed amount and the maximum interest rate to be permitted. These items most directly affect the security of the property for repayment of the subordinated purchase money trust deed. Other details the parties may contract to leave to the institutional lenders (as in *Burrow, supra*) or to usage and custom in the area for such loans, or to the negotiation of the buyers and the lender as was done here. However, if such details are left to the future agreement of buyer and seller, then the contract is uncertain and unenforceable.

The first amended complaint herein states facts sufficient to support the two causes of action alleged, the demurrer to which was improperly sustained.

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.