343 So.2d 486 (1977)
Clyde McGEE and Evelyn McGee
v.
Raymond CLARK and Mary Clark.
No. 49217.
Supreme Court of Mississippi.
March 16, 1977.
Felts, Russell & Adams, Nathan P. Adams, Jr., Abraham, Gleason & Powell, Claude H. Powell, Greenville, Wells, Gerald, Brand, Watters & Cox, Martha W. Gerald, Jackson, for appellants.
Campbell & DeLong, Roy D. Campbell, Jr., Claude L. Stuart, III, Greenville, for appellees.
Before INZER, SUGG and LEE, JJ.
*487 LEE, Justice, for the Court:
Raymond Clark and Mary Clark, his wife, filed suit in the Chancery Court of Washington County against Clyde McGee and Evelyn McGee, husband and wife, for specific performance of an option contract covering six hundred seventy-four (674) acres of land. The chancellor ordered specific performance and the McGees appeal here.
On August 30, 1965, appellants leased unto appellees the land involved for a period of ten (10) years beginning January 1, 1966, and ending December 31, 1975, at a yearly rental of eighteen thousand five hundred dollars ($18,500). At the same time, two (2) options were executed, one being a swap option for lands in Missouri, which has no bearing on this case, and the other granting appellees the right to purchase the land for the sum of three hundred thousand dollars ($300,000), at any time within the ten-year lease period, with the provision that rent for the year in which the option might be exercised would be applied to the purchase price. [Appendix I]. The term of the lease was made subject to the options and the lease and option were interdependent.
Prior to execution of these instruments, appellants applied for a loan from the Federal Land Bank of New Orleans in the amount of one hundred forty-seven thousand dollars ($147,000), and, on August 19, they received a commitment for same. Appellees agreed to the loan and agreed that they would cooperate with appellants in the consummation of the loan. Attorney Waits from Leland handled the proceedings. It was his opinion that the option agreement and the lease agreement were separate and distinct instruments and that, in the event of default and termination of the lease, the *488 option would still remain in effect. He suggested to appellants that they contact Attorney Burrell McGee, a relative of appellants, and that he prepare a supplemental agreement for execution by the parties. Waits also indicated to Attorney McGee, or at least Attorney McGee received the impression, that the Federal Land Bank required the supplemental agreement and a subordination of the lease and option before it would close the loan.
Attorney McGee wrote Attorney Young in Missouri, who represented appellees, advising him that the supplemental agreement, which he transmitted with a letter dated September 9, 1965, [Appendix II] was required to be executed before the loan could be closed. This was a misrepresentation of the facts, because all the Federal Land Bank required was a subordination of the lease and option to its deed of trust. Attorney McGee did not know that the representation was false nor did Attorney Young. Since appellees had agreed to cooperate with appellants in obtaining the loan, they signed the supplemental agreement [Appendix III] and for that reason only. At the same time, they also executed the subordination agreement.
The lease provided that the rental payments be made on November 1 in each year, and that
"(8) In the event of default by Lessees in the payment of any fixed annual rent and a continuance in such default for a period of thirty (30) days, or in case of breach by Lessees of any of the other covenants or conditions herein contained and their failure to cure such breach within a reasonable time after being so notified in writing by Lessors, Lessors shall have the right to re-enter and take possession of the premises, remove therefrom the goods and chattels of the Lessees and re-let said property to a third party. In such cases, the obligations of Lessees hereunder shall remain unaffected, except that Lessees shall be entitled to have credited against the unpaid rent due and to become due or other liability any amount of rent thus received from such third party on re-letting for the remainder of the term of this Lease."
Appellees made the payments from 1966 through 1972 on the following dates:
 December 2, 1966.
 November 2, 1967
 November 22, 1968
 November 7, 1969
 December 1, 1970
 December 14, 1971
 October 30, 1972
Appellees testified that McGee told them it was all right to pay the installments later than November 1. However, in December, 1971, McGee told his realtor, Heard, that appellees had defaulted in the rental payment and that he wanted him to collect same and terminate the option. When appellees were contacted by Heard, they immediately paid the 1971 rental, no written notice was given them to quit the premises, and no re-entry of the premises was attempted by appellants. Appellees made the 1972 payment on October 30, 1972, and on August 21, 1973, notified appellants in writing that they desired to exercise the option. Roy D. Campbell, attorney for appellees, testified that McGee telephoned him, acknowledged receipt of the written notice to exercise the option and asked him to get in touch with his attorney, Burnell Waits, and to work out a contract with him for the purchase and sale of the lands.

I.
Was the supplemental agreement void for misrepresentation, mutual mistake and want of consideration?
It is undisputed that appellees executed the supplemental agreement and subordination of the lease and option for the purpose of enabling appellants to obtain a Federal Land Bank loan. The representation was material, it induced the appellees to execute the supplemental agreement, and it was false. The result here is the same regardless of whether the misrepresentation was wilfully and knowingly made or whether it was innocently made. Appellants, appellees, Attorney McGee and Attorney Young all thought it was necessary for *489 appellees to execute the supplemental agreement in order for appellants to obtain the Federal Land Bank Loan.
In Rimer v. Dugan, 39 Miss. 477 (1860), the Court stated:
"The record further shows that Defendant had no title to the land he thus claimed to own, and for which complainant exchanged his land.
It is clear from the record that the complainant acted on the faith of defendant's representation, and that such representation was false. Whether the false representation was made with a knowledge that it was false, or without a knowledge that it was true, is wholly immaterial. If, knowingly, he represented what was not true, there can be no doubt he should be bound to make reparation. If, without knowing whether his representation was true or not, he took upon himself to make it to complainant, and upon the faith of it complainant acted, he is not less bound, although he may have been only mistaken, and therefore comparatively innocent." 39 Miss. at 482-483.
Also, in Penn Mutual Insurance Co. v. Nunnery, 176 Miss. 197, 167 So. 416 (1936), it was held:
"His good faith is not the test. If the representation was false, and the appellee was justified in relying upon it, then she agreed to the release under a mistake into which she was led by the affirmative act of the appellant's special agent, and she therefore is not bound thereby. [Citations omitted]." 176 Miss. at 210, 167 So. at 418.
The supplemental agreement does not indicate, nor does the proof reflect, that the agreement was supported by new consideration. A new consideration is essential to the validity of the agreement. Producers Gin Association v. Beck, 215 Miss. 263, 60 So.2d 642 (1952). The chancellor found that the supplemental agreement was void because of the misrepresentation of a material fact and for lack of consideration, and we agree that the chancellor was correct in so holding.

II.
Was the option sufficiently complete and capable of being specifically performed?
Appellants contend that the option cannot be specifically enforced because material elements of the instrument are missing, rendering it indefinite, uncertain and ambiguous. The instrument provides (1) that appellants sell to grantees the lands for $300,000, (2) the time and method for exercising the option, (3) upon exercise of the option a binding contract of sale and purchase be executed, (4) that appellants pay cost of Internal Revenue stamps, recording fees, attorneys fees and commission fees, (5) the method of payment of the purchase price together with the interest rate, number and amount of installments, (6) that the note contain a prepayment clause and for payment of attorneys' fees, and (7) that grantors deliver unto appellees a good and sufficient warranty deed conveying the lands free and clear from liens.
In Jones v. McGahey, 187 So.2d 579 (Miss. 1966), this Court said:
"A contract is sufficiently definite if it contains matter which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence. Having found a contract to have been made, an agreement should not be frustrated where it is possible to reach a reasonable and fair result. Corbin, Contracts, § 95 (1963); 17 Am.Jur.2d Contracts, §§ 75-77 (1964); cf. Russell v. Douglas, 243 Miss. 497, 504, 138 So.2d 730 (1962)." 187 So.2d at 584.
In Burrow v. Timmsen, 223 Cal. App.2d 283, 35 Cal. Rptr. 668, 100 A.L.R.2d 544 (1963), the District Court of Appeals for the Second District reversed a judgment of the Superior Court of Los Angeles County denying specific performance of a land sale contract. There was written acceptance of a written offer to sell real estate for fifty thousand dollars ($50,000) with fifteen thousand dollars ($15,000) to be paid down and with a deferred balance of thirty-five *490 thousand dollars ($35,000) evidenced by a note bearing interest at seven percent (7%) per annum, principal and interest payable at two hundred sixty dollars ($260) per month. The note was to be secured by a second deed of trust subordinate to a construction loan not to exceed three hundred thousand dollars ($300,000), with maximum interest rate of nine percent (9%) and maximum maturity date of thirty (30) years. The California court said the essentials of the agreement are the amount of the debt and the terms of payment, including the interest agreed upon, and then stated:
"We have concluded that the agreement is not so uncertain as to be incapable of enforcement. The modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done. Neither law nor equity requires that every term and condition of an agreement be set forth in the contract. [Citations omitted]. The usual and reasonable terms found in similar contracts can be looked to, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement. [Citations omitted]." 35 Cal. Rptr. at 671, 100 A.L.R.2d at 549.
We are of the opinion that the option is sufficiently clear, definite and certain in its terms, that it is capable of, and requires, specific performance, and that the chancellor committed no error in ordering specific performance.

III.
Did the trial court err in admitting testimony of Attorney McGee in violation of the privileged communication statute?
Attorney McGee testified that he had no knowledge of Federal Land Bank requirements and that he wrote the letter of September 9 based on information received from Attorney Waits. Appellants took the deposition of Attorney Waits prior to the trial and inquired about the lease, options, what Waits and Attorney McGee thought they meant, the supplemental agreement and how it originated. Further, Attorney McGee contacted appellee's counsel on two occasions about the matter before trial. We are of the opinion that there was no violation of the attorney-client relationship and that there is no merit in this assignment.
We have carefully considered the other assignments of error and are of the opinion that they are without merit and do not warrant discussion.
The case, therefore, is affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.

APPENDIX I

OPTION
THIS OPTION AND AGREEMENT, entered into this 30th day of August, 1965, by and between CLYDE McGEE, JR. and EVELYN McGEE, husband and wife, of Leland, Mississippi, hereinafter referred to as "Grantors" and RAYMOND CLARK and MARY CLARK, husband and wife, of Portageville, Missouri, hereinafter referred to as "Grantees"; WITNESSETH:
FOR AND IN CONSIDERATION of the sum of ONE DOLLAR ($1.00) and other valuable considerations, the receipt of which is hereby acknowledged, Grantors do hereby grant unto Grantees, an Option as hereinafter set forth, to-wit:
Grantors agree to sell to Grantees, for the sum of THREE HUNDRED THOUSAND no/100 ($300,000.00) DOLLARS, to be paid as hereinafter provided, the following described real estate, to-wit:
All of Section Fifteen (15), Township Eighteen (18) North, Range Six (6) West, lying West of Deep Slough and Six Mile Bayou, all of Section Fourteen (14), Township Eighteen (18) North, Range Six (6) West, lying South and West of Deep *491 Slough, and the North Half (N 1/2) of Section Twenty-Two (22), Township Eighteen (18) North, Range Six (6) West, all of said lands being located in Washington County, Mississippi, and containing 674 acres, more or less,
said lands being now under Lease to Grantees.
This Option shall continue for a period of ten (10) years from the date hereof, terminating on November 1, 1975, at 12 o'clock midnight; provided, however, that Grantees shall notify Grantors in writing of their desire to exercise said option and said notice is received by Grantors prior to midnight, November 1, 1975.
In the event Grantees desire to exercise said option as provided herein, Grantees shall notify Grantors in writing of the same and in the event said notice is received by Grantors prior to midnight, November 1, of any given year during the period of said option, Grantors agree to refund to Grantees the annual rental payment theretofore paid under the said Lease for said year.
It is further agreed by and between the parties hereto that this Option is granted on the following additional conditions:
(a) At the time of exercise of this Option, the Parties hereto shall execute a binding Contract of sale and purchase.
(b) All costs and expenses incurred in said sale shall be borne by Grantors, the same not to exceed the cost of internal revenue stamps, recording fees, attorneys' fees and brokerage or commission fees, if any.
(c) Grantees shall, upon consummation of the Contract, pay to Grantors, in cash, the sum of TWO HUNDRED THOUSAND no/100 ($200,000.00) DOLLARS, and shall execute a Promissory Note in the amount of ONE HUNDRED THOUSAND no/100 ($100,000.00) DOLLARS, secured by Second Deed of Trust on subject lands, to Grantors. Said Promissory Note shall bear interest at the rate of five and one-half percent (5 1/2) per annum, and shall be payable TEN THOUSAND no/100 ($10,000.00) DOLLARS, plus accrued interest, one year from the date of the consummation of said Contract, and TEN THOUSAND no/100 ($10,000.00) DOLLARS, plus accrued interest, on the same day of each year thereafter, until said Note and interest be fully paid. Said Note shall contain a clause providing for prepayment without penalty, and shall also contain a clause providing for payment of Attorney fees for collection.
(d) Grantees shall be permitted by Grantors to borrow the sum of ONE HUNDRED, FIFTY, THOUSAND no/100 ($150,000.00) DOLLARS, on said lands, and to secure said loan by First Deed of Trust on subject lands.
It is further agreed by and between the Parties hereto that in the event said Option is exercised in accordance with the terms and conditions herein set out, Grantors agree to deliver to Grantees a good and sufficient General Warranty Deed conveying good and merchantable title to said lands, free and clear of all liens and encumbrances.
WITNESS OUR SIGNATURES, this, the 30th day of August, 1965.
 /s/ Clyde McGee, Jr.
 Clyde McGee, Jr.
 /s/ Mrs. Evelyn M. McGee
 Evelyn McGee  GRANTORS
 /s/ Raymond Clark
 Raymond Clark
 /s/ Mary Clark
 Mary Clark  GRANTEES
 (Acknowledgments hereto annexed.)
STATE OF MISSISSIPPI |
 > ss.
COUNTY OF WASHINGTON |
PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said County and State, CLYDE McGEE, JR. and EVELYN McGEE, who acknowledged that they signed and delivered the foregoing instrument on the day and year therein mentioned as their own act and deed.
GIVEN UNDER MY HAND AND OFFICIAL SEAL, the 31st day of August, 1965.
*492
 /s/ Anne E. Smith
 Notary Public
My commission expires: February 5, 1967.
STATE OF MISSISSIPPI |
 > ss.
COUNTY OF WASHINGTON |
PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said County and State, RAYMOND CLARK, who acknowledged that he signed and delivered the foregoing instrument on the day and year therein mentioned as his own free act and deed.
GIVEN UNDER MY HAND AND OFFICIAL SEAL, this, the 31st day of August, 1965.
 /s/ Anne E. Smith
 Notary Public
My Commission Expires: February 5, 1967.
STATE OF MISSOURI |
 > ss.
COUNTY OF NEW MADRID |
PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said County and State, MARY CLARK, who acknowledged that she signed and delivered the foregoing instrument on the day and year therein mentioned as her own free act and deed.
GIVEN UNDER MY HAND AND OFFICIAL SEAL, this, the 31st day of August, 1965.
 /s/ Betty McAlister
 Notary Public
My Commission Expires: 6-10-69.

APPENDIX II
 September 9, 1965
Mr. Linus E. Young
Attorney at Law
Portageville, Missouri
Re: McGee-Clark transaction
Dear Mr. Young:
In accordance with our telephone conversation today, I enclose a supplemental agreement, subordination, and a letter from The Federal Land Bank of New Orleans to Mr. McGee.
The attorney for The Federal Land Bank has requested that we obtain a supplemental agreement to the lease and two options executed on August 30, 1965, with the provision as contained in the attachment to this letter. The supplemental agreement will be necessary in order for the Federal Land Bank to issue their check. The subordination agreement attached will be completed at the time the deed of trust to the Federal Land Bank has been recorded.
I would appreciate your reviewing the supplemental agreement and subordination together with the letter from The Federal Land Bank and advising me as soon as possible of any changes that you feel should be made.
After talking with you this morning, Mr. Martin Heard advised that he had discussed this matter with Mr. Clark and Mr. Clark had stated that he had no objection to the execution of the subordination.
As you can see from the letter addressed to Mr. McGee from the Federal Land Bank, dated August 26, 1965, this loan may be paid at any time regardless of source and without penalty. It may also be transferred in the event Mr. Clark should desire to assume the loan. Nevertheless, should Mr. Clark exercise one of the options this loan could be paid in full simultaneously with the loan proceeds from a lending institution of Mr. Clark's choice.
I do not believe that either of these instruments will materially affect any of the prior agreements executed by the Clarks and the McGees.
Very truly yours,
/s/ Burrell O. McGee
Burrell O. McGee
BOM/lmm
Encls.
cc: Mr. L. Martin Heard
 209 Broad Street
 Leland, Mississippi
cc: Mr. Clyde McGee, Jr.
 204 Cypress
 Leland, Mississippi

Appendix III to follow.

*493 APPENDIX III

SUPPLEMENTAL AGREEMENT
This Supplemental Agreement entered into on this, the 20th day of September, 1965, by and between CLYDE McGEE, JR. and EVELYN McGEE, husband and wife, of Leland, Mississippi, hereinafter referred to as "Grantors," and RAYMOND CLARK and MARY CLARK, husband and wife, of Portageville, Missouri, hereinafter referred to as "Grantees,"

WITNESSETH:
WHEREAS, the parties hereto have heretofore on August 30, 1965, entered into a lease agreement and two options; and
WHEREAS, grantors have obtained a limited loan commitment from the Federal Land Bank of New Orleans in the principal amount of $150,000.00 and in order to induce the said Federal Land Bank of New Orleans to make said loan, the parties hereto agree to supplement said lease and options by the following additional stipulations;
NOW, THEREFORE, for and in consideration of the mutual promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto do covenant and agree as follows, to-wit:

1.
In the event of default by grantees in any of the covenants, conditions or agreements contained in the aforesaid lease agreement dated August 30, 1965, then all rights and privileges granted to grantees by grantors in the aforesaid two options, both dated August 30, 1965, shall terminate and said options shall thereupon be null and void and of no effect.

2.
Grantors have obtained a commitment from the Federal Land Bank of New Orleans for a loan not to exceed the principal sum of $150,000.00, grantors to have the right and option of pre-paying the same at any time during the term thereof, and grantees for the same consideration do hereby agree that the aforesaid lease agreement and options will be subordinated to any such loan upon written request to grantees.

3.
Grantors agree that in the event of the exercise of either of the aforesaid options by grantees as provided therein, grantors will on written request of grantees satisfy and cancel the aforesaid loan within a reasonable time from receipt of request therefor.
WITNESS OUR SIGNATURES, this the 20 day of September, 1965.
 /s/ Clyde McGee, Jr.
 Clyde McGee, Jr.
 /s/ Evelyn McGee
 Evelyn McGee
 GRANTORS
 /s/ Raymond Clark
 Raymond Clark
 /s/ Mary Clark
 Mary Clark
 GRANTEES
STATE OF MISSISSIPPI
COUNTY OF WASHINGTON
PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said County and state, the within named Clyde McGee, Jr. and Evelyn McGee, husband and wife, who severally acknowledged that they signed and delivered the foregoing instrument on the day and year therein mentioned as their own act and deed.
GIVEN UNDER MY HAND AND OFFICIAL SEAL, this, the 21 day of September, 1965.
 /s/ F.J. Wiston
 Notary Public
(SEAL)
My commission expires: July 13, 1966.
STATE OF MISSOURI
COUNTY OF NEW MADRID
PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for *494 said county and state, the within named Raymond Clark and Mary Clark, husband and wife, who severally acknowledged that they signed and delivered the foregoing instrument on the day and year therein mentioned as their own act and deed.
GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the 20 day of September, 1965.
 /s/ Linus E. Young
 Notary Public
(SEAL)
My commission expires: 1-26-69