465 So.2d 1037 (1985)
Harold W. BUSCHING
v.
Margree GRIFFIN.
No. 55465.
Supreme Court of Mississippi.
March 6, 1985.
*1038 David L. Reynolds, Reynolds, Prewitt & Bradley, Jackson, for appellant.
Steve H. Smith, Smith & Case, Ridgeland, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
On January 6, 1984, the Chancery Court of Madison County, Mississippi, dismissed a claim for specific performance of a land option contract covering five acres in Ridgeland, Mississippi, under Mississippi Rules of Civil Procedure 12(b)(6) on the ground that the claim failed to state a cause of action upon which relief can be granted. On February 6, 1984, the chancellor dismissed appellant's motion under Mississippi Rules of Civil Procedure 59 and 60 for the chancellor to reconsider his opinion.
Appellant assigns as error:
1. Granting the motion to dismiss under Rule 12(b)(6).
2. Failing to recognize a valid contract between the parties.
3. Failing to grant specific performance.
On July 7, 1981, Griffin granted Busching an option for $500 to purchase five acres in Ridgeland, Mississippi, for $50,000. The expiration date of the original option was December 15, 1981, with a provision for extension. A proper legal description of the property was attached to the option.
Paragraph 4 of the option provides:
4. Purchase Price. The total purchase price for the property described shall be $50,000 to be paid by Busching if this option is exercised, the terms of such sale will be provided in an agreement to be exercised between Griffin and Busching. The sum paid for this option shall be credited on account of the cash payment to be made on the closing as will be provided in the agreement.
Paragraph 6 of the option states:
6. Exercise of option. If this option is exercised as herein provided, Griffin and Busching will respectively, as Seller and Purchaser, perform the obligations in the form of agreement to be made between them.
The option was signed by Griffin and recorded by Busching in the Land Records of Madison County.
On January 26, 1982, Griffin granted an extension of the option for one year or until the Chancery Court of Madison County decrees title to her, whichever is longer. *1039 Busching paid Griffin $25 for the extension. This extension was also recorded.
On March 4, 1982, Busching paid $400 to Griffin for an extension of the option from the last extended date for one year to January 22, 1984. This option provided that the $400 would be deducted from the purchase price, when and if the option is exercised. This option was likewise recorded in the Madison County Land Records.
On July 8, 1983, Busching wrote Griffin through his attorneys notifying her that he understood that she had received clear title and he intended to exercise the option with closing requested to take place within ten days. Busching wrote Griffin directly on August 10, 1983, notifying her that he intended to exercise the option to purchase the property and requested that the closing take place within ten days. Griffin refused to perform the contract and Busching filed a complaint for specific performance based upon the above facts.

ACTION OF THE TRIAL COURT
The trial court's opinion sustaining the motion to dismiss under MRCP 12(b)(6) notes that the option to purchase did not on its face provide for the type of deed the defendant was to convey nor does it recite the terms of payment. The court noted that paragraph 4 of the option stated that the terms of the sale would be provided in an agreement to be exercised [executed] between Griffin and Busching. Paragraph 6, the court noted, also contemplated that the parties would perform their obligations in the form of agreement to be made between them. To be enforceable, the court concluded that the contract to enter into a future contract must specify all the material and essential terms and leave none to be agreed upon as the result of future negotiations. Although the court noted that the law may imply the intention of the parties as to the time of payment, it may not imply what the parties would agree upon as to other essential terms of the contract. Therefore the court concluded that even though the price of the property was settled the option expressly contemplated a future agreement. The court was concerned that the seller may want the total purchase price in cash upon closing or may want to take a certain cash amount, subject to agreement to be made, and finance the balance over a period of time for whatever reason. The court's opinion concludes: "that the mentions of a subsequent agreement as to the purchase price are not definite and certain and leaves this to be agreed upon future negotiations."
In his motion under MRCP 59 and 60, Busching asks the court to recognize that Griffin failed to come into court with clean hands in that she refused to comply with the option agreement after the property was freed from litigation. His affidavit states that he would pay the $50,000 in a lump sum or subject to any terms within the bounds of the law specified by Griffin. At the hearing on the motion, Busching argued there were matters the court did not consider in rendering its judgment in that it looked merely at the form of the option. Busching offered to testify regarding the facts set forth in his affidavit but the trial court sustained defendant's motion to exclude Busching's testimony and dismiss Busching's motions.

I.

DID THE COURT ERR IN GRANTING THE MOTION TO DISMISS THE CLAIM UNDER RULE 12(b)(6)?
A motion to dismiss under MRCP 12(b)(6) tests the legal sufficiency of the complaint. As stated in Franklin County Co-Op v. MFC Services (AAL), 441 So.2d 1376 (Miss. 1983), and Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499 (Miss. 1985) to grant this motion there must appear to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim. The chancellor's basis for granting the motion was that the option contract was fatally defective in that it depended upon a future agreement as to the method of payment. The chancellor noted that Griffin may have wanted cash payment in *1040 advance or partial cash payment with the balance to be financed. The chancellor apparently considered this issue dispositive, regardless of whether Busching could meet whatever terms of payment Griffin might demand.
In McGee v. Clark, 343 So.2d 486 (Miss. 1977), this Court discussed the standard of specificity required for an option contract to be specifically enforced. The option provided for a down payment of two-thirds of the total purchase price, with the remaining third to be financed and secured by a deed of trust payable annually in specified installments at a specified interest rate. Id. at 491. This Court quoted Jones v. McGahey, 187 So.2d 579 (Miss. 1966), which reads:
A contract is sufficiently definite if it contains matters which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and, if necessary, relevant extrinsic evidence. Having found a contract to have been made, an agreement should not be frustrated where it is possible to reach a reasonable and fair result. (citations omitted)
187 So.2d at 584. Also cited with approval in McGee was Burrow v. Timmsen, 223 Cal. App.2d 283, 35 Cal.Rpr. 668, 100 ALR 2d 544 (1963), in which the California court said that the essentials of a land sale contract include the amount of the debt and the terms of payment, including the interest agreed upon. Burrow states:
We have concluded that the agreement is not so uncertain as to be incapable of enforcement. The modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done. Neither law nor equity requires that every term and condition of an agreement be set forth in a contract. (citations omitted) The usual and reasonable terms found in similar contracts can be looked to, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency, if it does not alter or vary the terms of the agreement. (citations omitted).
35 Cal.Rpr. at 671, 100 ALR2d at 549. The court in McGee held that the option was sufficiently clear, definite and certain in its terms that it is capable of and required specific performance and affirmed the chancellor's order of specific performance. Id. at 490.
The trial court and appellee relied upon the principle of law found in Etheridge v. Ramzy, 276 So.2d 451 (Miss. 1973), that where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. If any essential term is left open to future consideration, there is no binding contract, and an agreement to reach an agreement imposes no obligation upon the parties thereto. Id. at 454. See 17 Am.Jur.2d Contracts, section 26, at 362 (1964).
The option in Etheridge, supra, was found by this Court to be fatally defective in that it required covenants to be drafted to provide for the maintenance of "adequate" net worth to liability ratios, as well as covenants to limit the payment of salaries and dividends in the sale of a corporation. The court concluded that it was obvious that further negotiations must have been contemplated on these terms and therefore the option was nothing more than a memorandum of intent.
The chancellor recognized that the option in the case sub judice was not fatally defective merely for its failure to specify what type of deed would be given. In Jones v. Hickson, 204 Miss. 373, 37 So.2d 625 (1948), this Court held that a contract to sell and convey real estate ordinarily requires a conveyance of the fee simple title clear of all liens and encumbrances. Therefore, when such a contract is silent as to the character of the deed to be made, the presumption arises that a warranty deed was intended. Id. at 395-96. *1041 Hickson affirmed the chancellor's decision overruling a demurrer where the original bill, as in the case sub judice, prayed for a warranty deed.
The only term which remains to be supplied in this contract is the method of payment of the $50,000 purchase price. In 91 C.J.S. Vendor and Purchaser, sections 6 and 10 (1955), one finds the following statements:
The purchase price to be paid for the property is an essential term [of an option agreement] and must be agreed on; but the option contract need not contain any expressions as to the manner or form of payment.
Id. section 6.
Where an option does not specifically fix the time for payment of the purchase price, the law construes the offer to be for cash on delivery and before title passes.
Id. section 10.
In Calamari and Perillo Contracts, § 2-13 (1977), we find:
There is an important distinction between cases in which the parties have purported to agree on a contractual provision and done so in a vague and indefinite manner and cases in which they have remained silent as to a material term or have discussed the term but did not purport to agree upon it. Where parties are silent as to a material term, often the reasonable conclusion is that they intended that the term be supplied by implication.
In Kidd v. Early, 289 N.C. 343, 222 S.E.2d 392, 403 (1976), the North Carolina Supreme Court was faced with essentially the same question presented in the case sub judice. After reviewing extensive authorities, the court concluded that the terms of payment need not be set out in great detail but they should be clear. Where no terms are stated it would seem that the contract should be interpreted to mean payment in cash, since this would be in accord with common practice. Kidd involved an interpretation of an option contract where an unfilled blank on the printed form followed the seller's agreement to deliver a deed upon payment by the buyers of "the sum of six hundred per acre dollars under the following terms and conditions:" The court held that:
When an option to purchase real estate neither specifies the method of payment nor provides that terms are to be fixed by a later agreement, the law implies that the purchase price would be paid in cash. Thus the option contract in this case was not void because of failure by the parties to agree upon the terms of payment. There being no stipulation as to the terms of the payment in the option and no provision that they were open for future agreement, by legal implication the purchase price was to be paid in cash.
In the case sub judice, the pertinent part of the option reads:
The total purchase price for the property described shall be $50,000 to be paid by Busching if this option is exercised, the terms of such sale will be provided in an agreement to be exercised [executed] between Griffin and Busching. The sum paid for this option shall be credited on account of the cash payment to be made on the closing as will be provided in the agreement.
Busching interprets the last sentence to call for a lump sum cash payment upon delivery of the deed. He contends that Griffin should not be allowed to evade her obligation solely on the ground that § 6 of the option contemplates that the parties perform their obligations "in the form of an agreement to be made between them." Busching cites Vicksburg Water Works Co. v. J.M. Guffy Petroleum Co., 86 Miss. 60, 38 So. 302, (1905):
A stipulation to reduce a valid written contract to some other form does not affect its validity, and the stipulation may not be used by either of the parties for the purpose of ... evading performance of any of the provisions of the contract.
Id. at 66, 38 So. at 304. Busching argues that Griffin has been paid over $900 in option money and now seeks to evade her obligation on the ground that she was under *1042 no obligation in the first place because the option was too indefinite to be enforced. Busching also points out that in his sworn affidavit in support of his motion under Rules 59 and 60, he offered to pay Griffin the purchase price in a lump sum cash payment or under whatever installment terms she might prefer.
The chancellor could only dismiss Busching's complaint for specific performance if he was not entitled to any such relief under any set of facts which could be shown. This Court has previously stated that a court may consider the general circumstances of the parties and relevant extrinsic evidence in ascertaining whether the terms of a contract are sufficiently definite to be enforceable. Jones v. McGahey, 187 So.2d at 579, McGee v. Clark, 343 So.2d at 489. This Court has also noted that where there are substantial ambiguities in contracts sued upon, they may not be resolved summarily. Biggers v. Fox, 456 So.2d 761 (Miss. 1984); Dennis v. Searle, 457 So.2d 941 (Miss. 1984). Where the language of a contract is clear and unambiguous on its face, a court may grant summary judgment based upon the plain instruction contained therein. Smith v. First Federal Savings and Loan Ass'n, 460 So.2d 786 (Miss. 1984).
In our view, the language of paragraphs 4 and 6 of the option contain substantial ambiguities and therefore is not susceptible of a motion to dismiss under 12(b)(6). We therefore reverse and remand this case for additional proof upon the intent of the parties and the ability of Busching to meet whatever terms of payment Griffin may lawfully require.

II.

DID THE TRIAL COURT COMMIT ERROR IN FAILING TO RECOGNIZE A VALID CONTRACT BETWEEN THE PARTIES?
From our determination of the first assignment of error, it naturally follows that the second assignment of error is without merit. By granting the 12(b)(6) motion, the trial court failed to sufficiently develop facts to determine whether the contract was valid or not, and on remand the chancellor can determine the validity of the contract after taking additional evidence.

III.

DID THE TRIAL COURT ERR IN FAILING TO GRANT SPECIFIC PERFORMANCE?
No. Because of the inadequate development of the facts regarding the parties' intention of method of payment and Griffin's preference for form of payment, the trial court was not in error in failing to grant specific performance.
Specific performance could have been granted in this case only if the chancellor had concluded that the language in the option referring to a future agreement was a mere formality and that there was an express acknowledgment in paragraph 4 of a cash payment upon delivery of the deed. The rule regarding presumption of a cash payment in such action only negates such presumption where the option specifies a credit sale or that terms are to be fixed by a later agreement. Had the chancellor determined from the pleadings that the plain intent of the parties was for there to be a cash payment in full upon delivery of the deed, then and only then could the chancellor have rendered a judgment for specific performance. Obviously, then and only then would this Court summarily reverse the chancellor in his failure to do this and granting of the 12(b)(6) motion instead.
As we are reversing on the grounds set out under assignment number I, that this case must be remanded for additional proof as to the intention of the parties regarding method of payment, we cannot find merit in this assignment of error.
The chancellor's action in granting the motion to dismiss under Rule 12(b)(6) was error due to the ambiguous language contained in paragraphs 4 and 6 of the option, and the cause is remanded for additional proof upon the intent of the parties and the *1043 ability of Busching to meet whatever payment terms Griffin may lawfully require.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.